[Crim. No. 19261. First Dist., Div. Three. June 24, 1980.]

THE PEOPLE, Plaintiff and Respondent, v.
JAY CLAIR COLVER, Defendant and Appellant.

COUNSEL

Marc P. Bouret and Anderson & Nearon for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, and William D. Stein, Deputy Attorney General, for Plaintiff and Respondent.

## OPINION

**SCOTT, J.**—Appellant Jay Clair Colver was convicted of violating Elections Code section 29740, which prohibits the solicitation of money for the represented purpose of fraudulently inducing the proponents of an initiative measure to (a) abandon the measure, (b) fail, neglect, or refuse to timely file the measure after securing the requisite signatures, (c) stop the circulation of the measure, or (d) perform any act which would prevent or aid in preventing the measure from qualifying.[1]

---

[1]Elections Code section 29740 provides: "Every person who seeks, solicits, bargains for, or obtains any money, thing of value, or advantage of or from any person, firm, or corporation for the purpose or represented purpose of fraudulently inducing, persuading, or seeking the proponent or proponents of any initiative or referendum measure or recall petition to (a) abandon such measure or petition; (b) fail, neglect, or refuse to file in the office of the clerk or other officer designated by law, within the time required by law, such initiative or referendum measure or recall petition after securing the number of signatures required to qualify such measure or petition; (c) stop the circulation of such initiative or referendum measure or recall petition; or (d) perform any act that will prevent or aid in preventing the initiative or referendum measure or recall petition from qualifying as an initiative or referendum measure, or the recall petition from resulting in a recall election, is punishable by a fine not exceeding five thousand dollars ($5,000), or by imprisonment in the state prison 16 months or two or three years or in a county jail not exceeding one year, or by both such fine and imprisonment." (Added by Stats. 1976, ch. 1192, § 15.)

Appellant contends that section 29740 applies only to statewide initiatives and not to a local initiative as was involved in the instant case. Therefore, he argues, his conduct was not prohibited. He further alleges that the court erred in its instruction to the jury defining a proponent of an initiative, and that the evidence is insufficient to support his conviction.

In the fall of 1977, a local initiative measure, the "Hillside Initiative," was proposed in Walnut Creek. The measure would have rezoned certain areas, prohibiting building on ridge tops and otherwise regulating hillside building.

Terra California, the company responsible for the adult community of Rossmoor Development, concluded the initiative would effectively stop further development at Rossmoor, because it would drastically reduce the number of homes permitted on Rossmoor's hillsides. Appellant Jay Colver was among the supporters of the initiative; he spoke on its behalf at public meetings, and assisted with publicity during the period when petitions were being circulated in order to qualify for the ballot. He also had some responsibilities as treasurer for the Hillside Initiative Group.

On the morning of October 21, 1977, appellant telephoned David Wood, president of Terra California, and set up a luncheon meeting. At the meeting, appellant made an extensive sales presentation on diamonds as an investment. He then asked Wood about the impact of the initiative on Terra California, and stated that if the company would "consider some trade-offs," he could help them. Asked for an explanation, he stated that if the company would make a substantial investment in diamonds, he would go to work and "quash the initiative." When Wood told appellant that his company could not legally invest in diamonds, the luncheon "politely terminated."

Over a month later, after consulting an attorney, Wood reported this meeting to the district attorney. On November 28, 1977, Wood telephoned appellant from the district attorney's office; the call was tape recorded, as were all subsequent calls and face-to-face conversations between appellant and Wood. The recordings were all played at appellant's trial. Wood asked if appellant might be willing to "reconsider" their previous conversation; appellant suggested an immediate meeting, and the two met in a Lafayette parking lot. They discussed diamond investments. Appellant suggested a purchase of diamonds valued at

$250,000. Wood asked appellant if he could stop the initiative. Appellant replied that he didn't know and that the initiative signatures had all been gathered, but that "all things are possible." Appellant stated, however, that he could make no guarantees. When pressed by Wood as to just how he would thwart the initiative, appellant replied, "I don't know. I can't tell. Leave that up to me to figure it out." There was additional conversation relative to appellant's position with the initiative group, but no specific statements by appellant as to how he would disrupt the initiative. At the conclusion of their conversation, they agreed that Wood would gather $165,000 in cash and be in touch with appellant.

The initiative was in fact filed in the Walnut Creek City Clerk's office at 4:15 p.m. on the date of the latter conversation between Wood and appellant. Within an hour after the initiative had been filed, appellant and Wood arranged for another meeting to be held the following day, November 29. At that meeting, both Wood and appellant were aware that the initiative had been filed. The ostensible purpose of the November 29 meeting was Wood's request to get more specifics on what appellant would do. At the meeting appellant rather inartfully presented Wood with an index card on which he had written, "one, create internal dissension; two, provide inside information; and, three, unspecified dirty tricks, results not guaranteed." Appellant then gave Wood directions to meet him at a location in Berkeley where Wood was to turn over the money. Appellant gave him a briefcase for that purpose.

Appellant testified on his own behalf. He admitted he may have told Wood that in exchange for a diamond investment he would try to see that the initiative was stopped. It was his intent to convey to Wood that he was going to induce the proponents so that the initiative would stop, but he had no intention of trying to influence anyone to halt the initiative. He tried to be nonspecific about what he could do; he didn't intend to do anything, and didn't want Wood later coming back to him and asking why he didn't do specific things. Four of the five individuals whose signatures appeared on the "Notice of Intent to Circulate the Hillside Initiative" testified that they were aware of no actions by appellant to prevent the initiative from qualifying.

The initiative failed to qualify for the ballot for lack of valid signatures. No one has suggested that appellant was responsible for this inability to qualify.

## A. *The Prohibitions of the Election Code*

Initially, we address appellant's contention that Elections Code section 29740 does not apply to municipal elections.

Prior to 1976, penal provisions of the Elections Code were scattered in several divisions. In 1976, the code was reorganized to consolidate virtually all its penal provisions in division 17 (Legis. Committee com. to 1976 repeal of former §§ 29000 to 29004, West's Ann. Elec. Code).[2]

Appellant contends that the prohibitions of section 29740 apply to statewide measures only. He notes that section 29740 prohibits solicitation for the purpose or represented purpose of fraudulently persuading the *proponent or proponents of any initiative measure* to do certain acts. He then focuses on section 29710 of chapter 7, which defines proponent(s): "As used in this chapter, 'proponent or proponents of an initiative or referendum measure' means the person or persons who submit a draft of a petition proposing the measure to the Attorney General with a request that he prepare a title and summary of the chief purpose and points of the proposed measure." Appellant then correctly points out that unlike a statewide initiative, a local initiative measure is not submitted to the Attorney General. (See § 3500 et seq. [initiative and referendum measures affecting the Constitution or laws of the state]; § 4000 et seq. [initiative procedures in municipal elections].) Appellant reasons that when read in conjunction with section 29710, neither section 29740 nor section 29741[3] is applicable to local initiative measures. Therefore, his conduct was not prohibited, and his conviction must be reversed. Respondent argues that to exclude local elections from the scope of these statutes would be contrary to legislative intent.

---

[2]The other objectives of the revision were: elimination of anachronisms, inconsistencies, and repetitious material, spelling out the punishment for each crime, adoption of wobbler punishments for certain crimes, elimination of boobytraps and absurdities, and extension of penal provisions to cover measures. (Legis. Committee com. to 1976 repeal of former §§ 29000 to 29004, West's Ann. Elec. Code.)

[3]Elections Code section 29741 is directed at the proponent of an initiative or referendum measure or recall petition, and provides as follows: "Any proponent of an initiative or referendum measure or recall petition who seeks, solicits, bargains for, or obtains any money or thing of value of or from any person, firm, or corporation for the purpose of abandoning the same or stopping the circulation of petitions concerning the same, or failing or neglecting or refusing to file such measure or petition in the office of the clerk or other officer designated by law within the time required by law after obtaining the number of signatures required under the law to qualify such measure or petition, or performing any act that will prevent or aid in preventing the initiative, referendum or recall proposed from qualifying as an initiative or referendum measure, or resulting in

It is settled policy to construe a penal statute as favorably to the defendant as its language and the circumstances of its application may reasonably permit. (*Reyes* v. *Superior Court* (1977) 75 Cal.App.3d 214, 218 [141 Cal.Rptr. 912], citing *Keeler* v. *Superior Court* (1970) 2 Cal.3d 619, 631 [87 Cal.Rptr. 481, 470 P.2d 617, 40 A.L.R.3d 420].) Where the statute is susceptible of two reasonable constructions, a defendant is ordinarily entitled to that construction most favorable to him. (*Bowland* v. *Municipal Court* (1976) 18 Cal.3d 479, 488 [134 Cal. Rptr. 630, 556 P.2d 1081].) However, the fundamental rule of statutory construction is that the court should ascertain legislative intent so as to effectuate the purpose of the law. (*Hogya* v. *Superior Court* (1977) 75 Cal.App.3d 122, 132 [142 Cal.Rptr. 325].) Legislative intent is not to be ascertained from isolated parts of a statute or act; each part is to be construed with reference to the entire statutory system of which it is a part, in such a way that the various overall elements of the scheme are harmonized. (*Griffith* v. *Gibson* (1977) 73 Cal.App.3d 465, 470 [142 Cal.Rptr. 176].) Finally, statutory construction which leads to absurd consequences should be avoided. (*In re O'Neil* (1977) 74 Cal.App.3d 120, 123 [141 Cal.Rptr. 338].) ""The principle of strict construction does not allow a court to make that an offense which is not such by legislative enactment; but this does not exclude the application of common sense to the terms made use of in an act in order to avoid an absurdity which the Legislature ought not to be presumed to have intended.""" (*People* v. *Malcolm* (1975) 47 Cal.App.3d 217, 222 [120 Cal.Rptr. 667], citing *People* v. *Crenshaw* (1946) 74 Cal.App.2d 26, 29 [167 P.2d 781].)

One unambiguous and unequivocal expression of legislative intent appears in the first section of division 17, section 29100. That section flatly states: "The provisions of this division apply to all elections." The Legislative Committee's comment to the section explains: "As a result of consolidating virtually all the election crime provisions into this division, it is necessary to make clear the division's applicability to *all* elections." (Italics in original.)

Other sections of the division do not so readily disclose legislative intent. As appellant argues, the definition in section 29710 does suggest that not all initiative and referendum measures are within the scope of

a recall election is punishable by a fine not exceeding five thousand dollars ($5,000) or by imprisonment in the state prison for 16 months or two or three years or in a county jail not exceeding one year or by both such fine and imprisonment." (Added by Stats. 1976, ch. 1192, § 15.)

the chapter. However, section 29711 provides: "As used in this chapter, 'proponent or proponents of a recall petition' means the person or persons who have charge or control of the circulation of, or obtaining signatures, to such petitions." A recall petition may be circulated to commence proceedings for the recall of any elective officer, state or local. (See generally Elec. Code, § 27000 et seq.) Therefore, applying both these definitions, section 29740 appears to prohibit solicitation for the purpose of fraudulently inducing the proponents of either state *or* local recall petitions to abandon those petitions, but only prohibits similar conduct as to initiative and referendum measures when the measures are statewide. The prohibitions of section 29741 would be similarly limited. Stated another way, it would be a crime to solicit money for the represented purpose of inducing proponents of a local recall petition to abandon their efforts, but not a crime to similarly propose to interfere with a local initiative or referendum measure. Such a result seems absurd.

The confusion created by the chapter's statutory definitions of proponent(s) is not limited to sections 29740 and 29741. For example, according to section 29721, "Any person working for the proponent or proponents of an initiative or referendum measure or recall petition who refuses to allow a prospective signer to read the measure or petition is guilty of a misdemeanor." Applying the definitions of sections 29710 and 29711 as urged by appellant, this conduct is prohibited while circulating state or local recall petitions and state initiative and referendum measures, but not while circulating local initiative measures. Again, the result is absurd. Furthermore, according to section 29720, it is a misdemeanor to circulate any "state *or* local initiative, referendum or recall petition," intentionally misrepresenting its contents. (Italics added.) The scope of this statute is clear. However, why would the Legislature make it a misdemeanor to misrepresent the contents of any state or local initiative, referendum or recall petition, but exclude local initiatives and referendums from the prohibition on refusing to allow petition signers to read the measure?

Another example of the chapter's inconsistencies appears in section 29722: "Any person working for the proponent or proponents of a *statewide* initiative or referendum measure who covers or otherwise obscures the summary of the measure prepared by the Attorney General from the view of a prospective signer is guilty of a misdemeanor." (Italics added.) If "proponent...of an initiative...measure" as used in the

chapter always refers only to statewide initiatives, why did the Legislature specify "statewide" in this section?

■ To avoid these absurd results, we conclude that the definition of proponent(s) in section 29710 is not the exclusive definition of the term as used in the chapter, and that the Legislature intended the prohibitions of sections 29740 and 29741 to apply to state and local initiatives, referendum measures and recall petitions.[4]

### B. *"Proponent" Instruction*

We turn now to the question which follows, that is, who is a proponent of a local initiative or referendum measure? Consistent with the trial court's view, shared by this court, that Elections Code section 29740 applies to a local initiative, it properly refused appellant's instruction to the effect that a "proponent" of an initiative was a person who submitted a draft of the petition to the Attorney General. Such instruction would have been appropriate for a statewide initiative.

■ The court instructed the jury that "A proponent may include, but is not limited to, those individuals who file the Notice of Intent to Circulate Petition. A proponent is an advocate and supporter, an individual or group who lay down and defend a policy or legislative measure." The jury was further instructed that "The term, 'proponents,' as used in these instructions, refers to persons who have charge or control of the circulation or obtaining signatures of such petitions. Among the proponents of this initiative were John Clemson, Otto Mackroth, Jerry Zacharatos, Kay Moran, and Sal Rodriguez." We conclude that this instruction was incorrect.

From the definition of proponent(s) in section 29710, it is apparent that the Legislature intended the term as used in that chapter to refer to an identifiable group of individuals rather than to all those who advocate and support a particular measure. (See also § 3500 et seq. as to initiative and referendum petitions in state elections, i.e., § 3503 [proponents submit draft to Attorney General, proponents pay fee].) To be

---

[4]Respondent notes that while section 29710 defines "proponent...of *an* initiative," section 29740 speaks of "proponent...of *any* initiative" (italics added). Perceiving substantive significance in this difference, respondent concludes that the definition in section 29710 is inapplicable to section 29740. However, respondent's interpretation would lead to yet another anomalous result, as unlike section 29740, its companion section, 29741, does use the words of the definition: "Any proponent of *an* initiative." We read the difference as merely another of the chapter's multiple inconsistencies.

consistent, proponents of a local initiative or referendum measure should also be a similarly identifiable group. Section 4000 generally sets forth procedures for municipal initiatives and referendums; section 4002 requires that before circulating an initiative petition in any city, the proponents of such matter shall publish a notice of intention to do so. The notice shall be signed by at least one, but not more than five proponents. Similarly, section 3700 et seq. generally regulate county initiatives and referendums; section 3702 requires the proponents of such a measure to publish a notice of intention to circulate the petition. We conclude, therefore, that as used in chapter 7, the term "proponent or proponents of an initiative or referendum measure" includes for a statewide initiative, those who submit the measure to the Attorney General, and for local measures, those who sign the notice of intent to circulate the initiative petition for city initiatives, and those who publish the notice of intent to circulate the petition for county initiatives.[5]

From our conclusion as to the definition of proponent, it appears that the court's instruction was overbroad.

### C. *Effect of the Erroneous Instruction*

Appellant contends that there is not substantial evidence to support his conviction. We examine that contention particularly in light of the court's overbroad definition of proponent.

The standard of review of the sufficiency of the evidence supporting a criminal conviction was recently restated by the Supreme Court in *People* v. *Johnson* (1980) 26 Cal.3d 557, 578 [162 Cal.Rptr. 431, 606 P.2d 738]: "the court must review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence which is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." The court reiterated that the reviewing court must presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence.

The evidence here establishes that one month before the initiative was filed, appellant suggested to Wood that in exchange for an

---

[5]While both sections 4002 and 3702 require proponents to publish a notice of intention to circulate an initiative petition, only section 4002 requires the notice to be signed by the proponents; section 3702 has no signature requirement.

investment in diamonds, he would go to work to quash the initiative; he said nothing about how he would accomplish this. In a conversation a month later, appellant told Wood that the signatures were all in, that he had some ideas that might have worked earlier, but that "all things are possible." A day later, the two met again. Both knew that the initiative had been filed. Further discussion was held as to how the initiative could be stopped. On cross-examination, appellant testified as to the last conversation that it was his intent to convey to Wood that he was going to induce the proponents in such a manner as to stop the initiative.

Given the presumptions in favor of the judgment, it is possible to argue that from the two conversations which occurred before the initiative was filed, and from appellant's own admission, the jury could reasonably have inferred that when appellant told Wood *he* would go to work to quash the initiative, he meant that he would *induce the proponents* to abandon the measure or do one of the other acts specified in section 29740. However, the court's overbroad "proponent" instruction lessens the impact of appellant's admission. The jury could have inferred from that instruction that appellant was guilty of a violation of section 29740 if he solicited money for the represented purpose of fraudulently inducing *any of the advocates and supporters* of the Hillside initiative to abandon that initiative. While that may be what the evidence establishes that he did, that is not what the statute prohibits.

■ Error in an instruction may justify a reversal of the judgment when the jury is misdirected or misled upon an issue vital to the defense, and the evidence does not point unerringly to the guilt of the person accused. (*People* v. *Rogers* (1943) 22 Cal.2d 787, 807 [141 P.2d 722].) ■ The erroneous instruction may well have misled the jury in this case, and it is reasonably probable that a result more favorable to appellant would have been reached absent the error. (*People* v. *Watson* (1956) 46 Cal.2d 818 [299 P.2d 243].) Therefore, the judgment must be reversed.

■ Appellant also contends that at least one of his meetings with Wood occurred after the initiative was filed, when the proponents could no longer have done any of the acts specified in section 29740. Appellant therefore argues that he could not have committed the offense of which he was convicted. However, whether or not anything could have been done to stop the initiative at that late date is irrelevant. What the

statute prohibits is solicitation, not the inducement of someone to stop the initiative; appellant's initial solicitation of Wood occurred a month before the initiative was filed.

■ Appellant contends that the court erred in refusing a specific intent instruction. The court instructed the jury: "In the crime charged in Count I, a violation of California Elections Code 29740, there must exist a union or joint operation of act or conduct and general criminal intent. To constitute general criminal intent it is not necessary that there should exist an intent to violate the law. Where a person intentionally does that which the law declares to be a crime, he is acting with a general criminal intent even though he may not know that his act or conduct is unlawful."

■ Appellant seems to argue that section 29740 requires a specific intent to induce the proponents to do one of the acts specified, and that the jury should have been so instructed. "When the definition of a crime consists of only the description of a particular act, without reference to intent to do a further act or achieve a future consequence, we ask whether the defendant intended to do the proscribed act. This intention is deemed to be a general criminal intent. When the definition refers to defendant's intent to do some further act or achieve some additional consequence, the crime is deemed to be one of specific intent." (*People* v. *Hood* (1969) 1 Cal.3d 444, 456-457 [82 Cal.Rptr. 618, 462 P.2d 370].) Here the section proscribes solicitation; it does not require that the defendant intend to do any act beyond that solicitation. The jury was properly instructed as to intent, and appellant's contention is without merit.

Finally, appellant's contentions that he was denied effective assistance of counsel and that he was entrapped are without merit.

The judgment is reversed.

White, P. J., and Feinberg, J., concurred.

A petition for a rehearing was denied July 23, 1980.