[No. H000191. Sixth Dist. Dec. 13, 1985.]

WESTERN LAND OFFICE, INC., Plaintiff and Respondent, v.
TERESA CERVANTES et al., Defendants and Appellants.

COUNSEL

Lydia Villarreal, Juan Uranga, Robert K. Miller, Anna M. Caballero, Caballero, Govea, Matcham & McCarthy and Anthony White for Defendants and Appellants.

Donald S. Bolles and Hutton, Foley, Anderson & Bolles for Plaintiff and Respondent.

Jon D. Smock and Wilbur H. Haines III as Amici Curiae on behalf of Plaintiff and Respondent.

## Opinion

**THE COURT.**\*—Respondent Western Land Office, Inc. (hereinafter the landlord) filed eight separate complaints for unlawful detainer against appellants (hereinafter the tenants) in the Municipal Court of Monterey County. In their answers the tenants alleged the affirmative defense of retaliatory eviction. (Civ. Code, § 1942.5.) The cases were consolidated for trial, and the trial was held before a jury. The jury returned a general verdict in favor of the landlord on all complaints, and judgment was entered accordingly.

The tenants appealed, and the Appellate Department of the Monterey County Superior Court reversed the judgment. The landlord then filed an application for certification to the Court of Appeal. (Cal. Rules of Court, rule 63.) The appellate department granted the certification, and we ordered the appeal transferred to this court. (Code Civ. Proc., § 911.)

The principal issue which confronts us is this: In an unlawful detainer action, where the affirmative defense of retaliatory eviction is asserted pursuant to Civil Code section 1942.5, who has the burden of proving what? We hold that under that section, (1) the tenant has the overall burden of persuasion on the issue of retaliatory eviction, but (2) in certain circumstances, hereinafter specified, the landlord has the burden of giving notice of, and of proving, a valid ground for his action.

### Background

The landlord in this case was a California corporation wholly owned by two married couples, parties named Martinus and Heinsen. In January of 1983 the landlord purchased a parcel of real property known as the "Little Waco Camp,"[1] near the Town of San Lucas in Monterey County. The property was purchased as an investment. Situated on the property were 30 houses and 20 trailers. At the time of the purchase, the tenants were paying rents ranging from $205 to $285 per unit per month, and the rent included utilities.

Before the purchase, the landlord's officers were aware that repairs would be needed, but they assumed that the income generated from the rental units would cover the cost of the repairs. After the purchase, they discovered

---

*Before Panelli, P. J., Brauer, J., and Leach, J.†

†Assigned by the Chairperson of the Judicial Council.

[1]The property previously had been used as a camp for agricultural workers, but when the landlord purchased it, it was ordinary rental property. On January 1, 1984, prior to trial in this action, the property reverted to its former status as a labor camp, pursuant to Health and Safety Code section 17008, as amended by Statutes of 1983, chapter 777, section 1.

that the rental units were in worse shape than they originally had been led to believe. Accordingly, they decided that a rent increase of $60 per month per unit (across the board) would be necessary "to continue to make the repairs and to be able to operate the camp at least at a break-even proposition . . . ." Notices of the proposed rent increase were sent to all of the tenants near the end of March of 1983. The effective date of the increase was to be June 1, 1983.

Predictably, the tenants were not pleased. Many of them complained to the landlord's officers that the rent increase was too high. They also complained of defects in their housing units, such as inoperable stove ovens, inadequate heating, doors and windows that did not close properly, leaking pipes, and leaking ceilings. Shortly after receiving notice of the rent increase, many of the tenants held meetings to discuss what should be done. The meetings were organized by tenant Teresa Cervantes, and held in the house of tenant Mariano Salcido Garcia. Attorneys from California Rural Legal Assistance (CRLA) were invited to attend the meetings, and did so. Each of the tenants involved in this action attended the meetings.

On Friday, April 29, 1983, a group of 11 tenants complained to the Monterey County Health Department about living conditions at Little Waco.[2] Their complaints included "water bad, housing bad, raised rent, upset with conditions, new owner." The following Monday, May 2, 1983, a county health department employee inspected the houses at Little Waco,[3] accompanied by the landlord's officers. The next day, May 3, the employee sent to the landlord a written report listing the deficiencies that needed to be corrected.

Employees of the landlord set about making repairs. During the months of June through November of 1983, health department employees conducted six inspections of the premises. By June 29, 60 percent of the required repairs had been made. By November 22, 100 percent of the required repairs had been made.

Meanwhile, during the summer of 1983 the landlord's officers attempted to negotiate with the tenants and their attorneys about the increase in rent. After June 1, some of the tenants paid the increased rents, while others did not. The landlord's president told the tenants and their attorneys that the landlord was having trouble financially, that an increase in rent of $60 per month per unit would be needed to "break even," and that the landlord was

---

[2]Only one of the eleven complainants was named as a defendant in this action.

[3]William Munger, senior sanitarian employed by the Monterey County Health Department, testified that he inspected only the houses because he had no jurisdiction over mobilehomes.

losing money and would have to "close the camp." The negotiations were not successful.

In November of 1983, apparently dissatisfied with the repairs that had been made, the tenants filed an action in superior court against the landlord, seeking a preliminary injunction prohibiting the increase in rents. A court hearing was held on November 23, 1983. Thereafter, on a date not specified, the superior court denied the preliminary injunction.

On November 16, 1983, while the superior court lawsuit was in progress, county health department employees took a sample of the water in the well which served as Little Waco's water supply. Analysis performed at a state laboratory disclosed that the water contained an unacceptably high level of nitrates. The landlord's president testified that he first learned of this problem on December 2, 1983. The county employees requested the landlord to have a more complete chemical analysis performed on the water in the well. The landlord complied, and the second analysis showed that Little Waco water contained not only an unacceptably high level of nitrates, but of sulfates and of chlorides as well. On December 16, 1983, three days after the second analysis had been received, the county health department sent to the landlord a letter saying (1) that Little Waco water did not meet state standards; (2) that the landlord should inform all tenants that the water was not potable, and that they should not use it; (3) that the landlord had to provide all tenants with bottled water;[4] (4) that an acceptable permanent water source had to be found; and (5) that plans for the development of a safe water source should be submitted to the department.

Meanwhile, the landlord renewed negotiations with the tenants and their attorneys concerning the increase in rents. The county health department was invited to make yet another inspection of the premises. An inspection was made on December 2, 1983, at which time county employees, the landlord's officers, and the tenants' attorneys were present. Another inspection was made on December 6. In the course of these inspections the landlord's president and county employees noted that many of the repairs that already had been effected needed to be done again. On December 7, 1984, the county health department issued to the landlord a letter listing "a series of defects that had to be cured."

A meeting was held on December 19, 1983, attended by county health department employees, the landlord's officers, and counsel for the tenants.

---

[4] Two tenants, Bruna Gonzales and Teresa Cervantes, testified that the landlord supplied them with bottled water. However, they complained that the landlord did not supply them with *enough* water, and so they had to buy additional bottled water from other sources.

The problem of finding a new water source was discussed. After that discussion the landlord's officers announced that the Little Waco Camp (Camp) would close down as of February 1, 1984. Thirty-day notices of termination of tenancy were sent to all residents of the Camp between December 21, 1983 and January 1, 1984. Each such notice read in part: "[¶] The reason for this notice to quit is that the entire camp will be closed on February 1, 1984. Replacement of the entire water system for drinking and culinary purposes, as required by the Monterey County Health Department, and other factors make continued operation of the camp economically not feasible."

In January of 1984, on a date not specified, the landlord's officers hired a well driller to drill a new well on the premises. The new well produced water containing unacceptably high levels of nitrates, chlorides, and sulfates. Analysis of water samples obtained from wells on neighboring properties showed that those wells too had high levels of contaminants. It did not appear that potable well water could easily be found on the Little Waco parcel.

On February 3, 1984, the eight complaints in unlawful detainer, which ultimately were consolidated in this action, were filed in municipal court.

On February 8, 1984, the county health department, in a letter sent to the landlord, ordered the Camp closed by March 13, 1984. The landlord then requested that five "caretaker" families be allowed to remain on the property to prevent vandalism and to "hold together the assets that are left." The caretaker families were selected because they had a good economic history and because they had expressed interest in keeping the Camp open. The landlord wanted the caretakers to remain on the property until such time as it could be sold. The county at first allowed five caretaker families to remain, but by letter dated February 29, 1984, it limited the number of caretaker families to one. None of the caretakers was made a defendant in this action. By the time of trial, four of the five caretaker families had been served with thirty-day notices of termination of tenancy.

## THE TRIAL

At trial two of the landlord's officers testified that retaliation played no part in the decision to evict the tenants. Paul Martinus put it this way: "Why we decided to close the camp, it was for economic reasons because we are seeing our expenses far exceed our income and we couldn't see where the situation was going to change and we got the results back on our water quality and it didn't meet the State standards and we couldn't see any viable way to resolve that problem, so the choice was kind of made up for us." Milton Heinsen, the landlord's president, said: "[O]ur reasons were we

were losing money. Then it became apparent that the water was bad, it concerned us greatly, especially what we knew about our ability to find water and we went and drilled anyway in an attempt to find water. It was economic on our part, we were losing money . . . and hopes for improvement didn't look very good." Heinsen further testified that as of December 19, 1983, the landlord had lost approximately $15,000 in operating the Camp, and had earned no profits. Though the tenants challenged this evidence on cross-examination, they produced no evidence of their own to the contrary.

The tenants testified (1) as to certain defects in their respective living quarters; (2) that they had complained to the landlord about those defects; (3) that they had complained to the county health department about those defects; (4) that they had participated in meetings organized to protest the proposed increase in rents; and (5) that they had filed a lawsuit against the landlord in superior court. They also produced an expert witness on the subject of water quality, who testified that the water at Little Waco Camp could be made potable by installing treatment facilities in the individual housing units. According to the expert, the cost of the treatment facilities would be approximately $500 per housing unit. He testified that he did not recommend that the water be treated at the well site, because the cost would have been prohibitive.

In rebuttal the landlord called to the stand a representative of the county health department, who testified that the county would not permit the water to be treated in the individual housing units. He said, "We take the position that the source must be treated; we will not accept individual treatment in the individual homes." He also testified that he previously had informed Heinsen of that fact.

The trial court instructed the jury (1) that the landlord had the burden of proving by a preponderance of the evidence that it acted in good faith in evicting the tenants because the operation of the Camp was economically unfeasible, and (2) that the tenants had the burden of proving by a preponderance of the evidence that the landlord evicted them in retaliation for (a) their complaints to the county health department, and (b) their filing of a lawsuit against the landlord. The court rejected certain instructions proposed by the tenants. We discuss the instructions *post*.

The jury deliberated approximately two hours and twenty minutes. The vote was nine to three in favor of the landlord.

## CONTENTIONS ON APPEAL

The tenants here contend, as they did below, that where a landlord moves against a tenant within 180 days after the tenant complains, section 1942.5

of the Civil Code establishes a rebuttable presumption of retaliation, which places upon the landlord the burden of proving by a preponderance of the evidence that his action was not prompted by a retaliatory motive. Therefore, claim the tenants, the trial court incorrectly instructed the jury as to the burden of proof (i.e., the burden of persuasion), and the error warrants a reversal.

The landlord contends that Civil Code section 1942.5 creates no rebuttable presumption, or if it does, the presumption affects only the burden of producing evidence. Therefore the court correctly instructed the jury, and the judgment should be affirmed.

To evaluate these contentions we must examine the history surrounding Civil Code section 1942.5.

## LEGAL HISTORY

A. *The Evidence Code*

We begin with the Evidence Code, enacted in 1965. Section 500 of that code provides: "Except as otherwise provided by law, a party has the burden of proof as to each fact the existence or nonexistence of which is essential to the claim for relief or defense that he is asserting." The burden is on the party alleging an affirmative defense to prove it. (*Prince* v. *Kennedy* (1906) 3 Cal.App. 404, 407 [85 P. 859].) The existence or nonexistence of a landlord's retaliatory motive is ordinarily a question of fact. (*Four Seas Inv. Corp.* v. *International Hotel Tenants' Assn.* (1978) 81 Cal.App.3d 604, 610 [146 Cal.Rptr. 531].)

Section 520 of the Evidence Code provides: "The party claiming that a person is guilty of a crime or wrongdoing has the burden of proof on that issue." For example, a party who raises an affirmative defense of bad faith has the burden of proving it by a preponderance of the evidence. (*People* ex rel. *Dept. Pub. Wks.* v. *Lagiss* (1963) 223 Cal.App.2d 23, 37 [35 Cal.Rptr. 554].)

If the foregoing two Evidence Code sections were the only law on the subject, it would appear that a tenant who raises an affirmative defense of his landlord's retaliatory motive would clearly have the burden of proof—i.e., the burden of persuasion by a preponderance of the evidence—on that issue.

Of course, the Legislature and the courts may alter the burden of proof. (See *Worsley* v. *Municipal Court* (1981) 122 Cal.App.3d 409, 420 [176

Cal.Rptr. 324].) The central question in this case is whether Civil Code section 1942.5 assigns the burden of proof contrary to the general rule expressed in Evidence Code section 500.

## B. *The Original Civil Code Section 1942.5*

Civil Code section 1942.5 originally was added by Statutes of 1970, chapter 1280, section 5, pages 2316-2317. It was signed by the Governor on September 16, 1970, and became effective January 1, 1971. The full text of the section as it then read is set forth in the margin.[5] In essence, the statute provided that if a tenant complained about the tenantability of a dwelling, the landlord was prohibited from accomplishing his purpose within 60 days from the date of the complaint, the date of an inspection or citation, or the date of any judgment or arbitration award adverse to the landlord on the issue of tenantability, whichever date came latest. Subsequently, it was held that the statute was to "be liberally construed to effect its objectives and to suppress, not encourage, the mischief at which it was

---

[5]As originally enacted, Civil Code section 1942.5 read as follows: "(a) If the lessor has as his dominant purpose retaliation against the lessee because of the exercise by the lessee of his rights under this chapter or because of his complaint to an appropriate governmental agency as to tenantability of a dwelling, and if the lessee of a dwelling is not in default as to the payment of his rent, the lessor may not recover possession of a dwelling in any action or proceeding, cause the lessee to quit involuntarily, increase the rent, or decrease any services, within 60 days:

"(1) After the date upon which the lessee, in good faith, has given notice pursuant to Section 1942; or

"(2) After the date upon which the lessee, in good faith, has filed a written complaint, with an appropriate governmental agency, of which the lessor has notice, for the purpose of obtaining correction of a condition relating to tenantability; or

"(3) After the date of an inspection or issuance of a citation, resulting from a written complaint described in paragraph (2) of which the lessor did not have notice; or

"(4) After entry of judgment or the signing of an arbitration award, if any, when in the judicial proceeding or arbitration the issue of tenantability is determined adversely to the lessor.

"In each instance, the 60-day period shall run from the latest applicable date referred to in paragraphs (1) to (4), inclusive.

"(b) A lessee may not invoke the provisions of this section more than once in any 12-month period.

"(c) Nothing in this section shall be construed as limiting in any way the exercise by the lessor of his rights under any lease or agreement or any law pertaining to the hiring of property or his right to do any of the acts described in subdivision (a) for any lawful cause. Any waiver by a lessee of his rights under this section shall be void as contrary to public policy.

"(d) Notwithstanding the provisions of subdivisions (a) to (c), inclusive, a lessor may recover possession of a dwelling and do any of the other acts described in subdivision (a) within the period or periods prescribed therein if the notice of termination, rent increase, or other act, and any pleading or statement of issues in an arbitration, if any, states the ground upon which the lessor, in good faith, seeks to recover possession, increase rent, or do any of the other acts described in subdivision (a). If such statement be controverted, the lessor shall establish its truth at the trial or other hearing."

directed." (*Kriz* v. *Taylor* (1979) 92 Cal.App.3d 302, 311 [154 Cal.Rptr. 824].)

Subdivision (a) of the statute was in accord with the theory that the tenant had the burden of proving the landlord's retaliatory motive by a preponderance of the evidence. That subsection spoke of the landlord having "as his dominant purpose retaliation against the lessee . . . ." It was that dominant purpose which, if proven, prevented the landlord from achieving his desired end for a period of 60 days. The burden of proving that purpose clearly was on the tenant, since no landlord could be expected to prove that he acted with a retaliatory motive.

Subdivision (c) of the statute provided that the landlord, even if he had retaliation in mind, could nevertheless prevail if the tenant violated "any lease or agreement or any law pertaining to the hiring of property . . . ." For example, if the tenant was in default in payment of the agreed rent, or if he violated a covenant in a lease, or if he committed waste or maintained a nuisance, the landlord could move to evict him even though the tenant had complained about the habitability of the premises. (Code Civ. Proc., § 1161.) The defense of retaliatory eviction was not available to a tenant who himself was at legal fault.

Subdivision (d) of the statute covered the situation where the complaining tenant was not in violation of any law or agreement, but the landlord nevertheless wished to take action in good faith for a valid reason. For example, a landlord might have wanted (1) to raise the tenant's rent because taxes on the property had increased; (2) to recover possession of the tenant's dwelling for the purpose of remodeling or demolishing; or (3) to sell the premises to someone who had another tenant in mind. In such situations, subdivision (d) required the landlord to inform the tenant, by notice and by pleading, of "the ground upon which the lessor, in good faith, seeks to recover possession, increase rent, or do any of the other acts described in subdivision (a). *If such statement be controverted,* the lessor shall establish its truth at the trial or other hearing." (Italics added.)

Note that in the examples just mentioned, the "ground" upon which the landlord wished to move—the increase in property taxes, the desire to remodel or demolish, the contract of sale—was in each instance within the especial knowledge of the landlord. Under ordinary circumstances, a tenant would not know about an increase in property taxes or plans for remodeling, demolition, or sale. The landlord has "peculiar" knowledge of such facts. "Where the evidence necessary to establish a fact essential to a claim lies peculiarly within the knowledge and competence of one of the parties, it may be necessary to place the burden [of proof] on the party possessing that

knowledge." (*Baker* v. *Wadsworth* (1970) 6 Cal.App.3d 253, 263 [85 Cal.Rptr. 880].) Consequently it comes as no great surprise that subdivision (d) placed upon the landlord the burden of proving a valid "ground" by a preponderance of the evidence in any instance where the tenant "controverted" such ground.

Proof of a valid ground may undermine evidence of a retaliatory motive. But proof of a valid ground is not equivalent to proof of good faith. In a given instance, a valid ground might exist but the landlord might nevertheless act with a retaliatory motive. A property tax increase of five dollars does not necessarily justify an increase in rent of one hundred dollars. Therefore, under subdivision (a) of the statute, a trier of fact confronted with substantial evidence of a valid ground nevertheless had to decide whether the landlord's "dominant purpose" was retaliation. On that issue the tenant bore the burden of persuasion.

Under the former Civil Code section 1942.5, the tenant's burden of persuasion was comparable to and consistent with his burden in a case where he claimed that an eviction was motivated by racial discrimination. In *Abstract Investment Co.* v. *Hutchinson* (1962) 204 Cal.App.2d 242 [22 Cal.Rptr. 309], the Court of Appeal recognized that a defense built upon allegations of racial discrimination could be asserted in an unlawful detainer action. The court there said: "[¶] We hold that defendant should have been permitted to *produce proof* of the allegations of his special defenses of discrimination, which *if proven* would bar the court from ordering his eviction because such 'state action' would be violative of both federal and state Constitutions." (*Id.*, at p. 255; italics ours.)

## C. *The Common Law Defense*

On November 10, 1970, after former Civil Code section 1942.5 was enacted but before it became effective, the California Supreme Court filed its opinion in *Schweiger* v. *Superior Court* (1970) 3 Cal.3d 507 [90 Cal.Rptr. 729, 476 P.2d 97]. In that case the facts were these:

Schweiger complained to his landlord about two broken windows and a broken back door that could not be locked. About two weeks later, the landlord responded with a letter informing Schweiger that his rent would be increased. Then the landlord replaced the two broken windows, but did not repair the back door. Schweiger therefore refused to pay the increased rent. After appropriate notice the landlord commenced an unlawful detainer action. Schweiger defended on the ground that the imposed rent increase was unlawful retaliation against him for asserting his statutory rights. The small claims court rendered judgment in favor of the landlord. Schweiger

appealed to the superior court, which held a trial de novo. Again judgment was rendered in favor of the landlord. The superior court expressed agreement with Schweiger's contention of retaliatory motive, but it rejected, as a matter of law, his defense that such retaliatory action violated public policy. Nevertheless, the superior court certified the case to the Court of Appeal. The Court of Appeal refused to transfer the case. Schweiger thereupon sought a writ of mandate to compel the superior court to hear his defense based upon the retaliatory motivation of his landlord.

In its opinion the California Supreme Court recognized for the first time "a defense that the eviction is sought in retaliation for the exercise of statutory rights by the tenant." (*Id.*, at p. 517.) It issued a peremptory writ of mandate. (*Id.*, at p. 518.) The court took notice of the fact that the Legislature recently had enacted former Civil Code section 1942.5, but did not construe the statute because it became effective after the opinion was filed. (*Id.*, at p. 516, fn. 4.)

Eleven years later, the court referred to its judicially recognized defense as "the common law retaliatory eviction defense." (*Barela* v. *Superior Court* (1981) 30 Cal.3d 244, 249 [178 Cal.Rptr. 618, 636 P.2d 582].) The court also noted that former Civil Code section 1942.5 codified the affirmative defense of retaliatory eviction. (*Id.*, at p. 249.) "Thus, California has two parallel and independent sources for the doctrine of retaliatory eviction." (*Id.*, at p. 251.)

With respect to the burden of proof under the common law doctrine, the court in *Schweiger* said this: "If a tenant factually establishes the retaliatory motive of his landlord in instituting a rent increase and/or eviction action, such proof should bar eviction." (*Schweiger* v. *Superior Court, supra,* 3 Cal.3d at p. 517.) Then, quoting from *Edwards* v. *Habib* (D.C.Cir. 1968) 397 F.2d 687, 702, cert. den. (1969) 393 U.S. 1016 [21 L.Ed.2d 560, 89 S.Ct. 618], the court went on to say this: "Of course, we do not imply that a tenant who proves a retaliatory purpose is entitled to remain in possession in perpetuity. As the court stated in *Edwards:* 'If this illegal purpose is dissipated, the landlord can, in the absence of legislation or a binding contract, evict his tenants or raise their rents for economic or other legitimate reasons, or even for no reason at all. The question of permissible or impermissible purpose is one of fact for the court or jury. . . .' (Fns. omitted.)" (*Schweiger* v. *Superior Court, supra,* 3 Cal.3d at p. 517.)

Since the California Supreme Court and the Legislature worked independently, there were differences between the statutory and common law defenses. Under former Civil Code section 1942.5, subdivision (b), a tenant could assert his statutory defense of retaliation only once in any 12-month

period, whereas no such limitation was placed on the assertion of his common law defense. The statute spoke of a specific 60-day time period within which a landlord could not prevail if he acted in retaliation; whereas under the common law doctrine, the landlord could prevail if his retaliatory motive had "dissipated." But the two defenses, statutory and judicial, were *parallel* defenses. Each required the tenant to prove that his landlord acted with a retaliatory motive.

The point was illustrated in *Four Seas Inv. Corp.* v. *International Hotel Tenants' Assn., supra,* 81 Cal.App.3d 604. There the plaintiff landlord bought an old dilapidated hotel, apparently with the idea of demolishing it. After escrow had closed, the City and County of San Francisco filed suit to abate the property as a public nuisance. The landlord decided not to contest the action, permitted the city to obtain an abatement injunction, and elected to demolish the building as part of a larger construction project. The landlord refused to negotiate with the tenants. The tenants made continuing efforts to enlist public and governmental support for their plight. The landlord served the tenants with a 30-day notice. The tenants refused to vacate. The landlord brought an action in unlawful detainer, and the tenants set up the defense of retaliatory eviction.[6] The trial court directed a verdict in favor of the landlord. The Court of Appeal affirmed, noting that the record (1) contained "uncontroverted evidence of a preexisting rational, uncontrived and substantial business motive," and (2) contained "no evidence in support of [the tenants'] defense of retaliatory eviction." (*Id.,* at p. 610.) The court said: "It is true, as appellants argue, that motive is ordinarily a factual issue to be resolved by the trier of fact, but such an issue cannot be submitted to the jury unless substantial evidence appears in the record to support it. . . . [The landlord] bought the building with knowledge of its defects, and for the purpose of demolition. That it may have from the first intended to evict its tenants as part of the process hardly establishes the existence of the kind of reprisal interdicted by the cases on retaliatory eviction." (*Ibid.*)

D. *Expansion of the Common Law Concept, 1970-1979*

In *Aweeka* v. *Bonds* (1971) 20 Cal.App.3d 278 [97 Cal.Rptr. 650], the Court of Appeal held that a landlord's retaliatory motive could form the basis of a tenant's affirmative cause of action for damages. The court said this: "In *Schweiger,* on substantially identical facts, our Supreme Court held that a tenant has a defense to an unlawful detainer action when the landlord's motive is retaliation for the exercise of statutory rights under Civil Code

---

[6]The opinion of the Court of Appeal does not make clear whether the tenants asserted the statutory or the common law defense.

section 1942. We can discern no rational basis for allowing such a substantive defense while denying an affirmative cause of action. It would be unfair and unreasonable to require a tenant, subjected to a retaliatory rent increase by the landlord, to wait and raise the matter as a defense only, after he is confronted with an unlawful detainer action and a possible lien on his personal property (Civ. Code, § 1861a). Accordingly, we conclude on the authority of *Schweiger* that the complaint stated a cause of action for retaliatory eviction." (*Id.,* at p. 281.)

In *S.P. Growers Assn.* v. *Rodriguez* (1976) 17 Cal.3d 719 [131 Cal.Rptr. 761, 552 P.2d 721], the California Supreme Court extended the scope of the common law defense beyond mere complaints about conditions of tenancy. There the court held that an eviction in retaliation for the filing of a federal lawsuit charging violations of a federal farm labor statute was improper. "The test set down in *S.P. Growers, supra,* is quite simple. A valid defense of retaliatory eviction may be advanced if, on balance, the public policies furthered by protecting a tenant from eviction outweigh the state's interest in ensuring that unlawful detainer proceedings are truly summary." (*Barela* v. *Superior Court, supra,* 30 Cal.3d at p. 250.)

One other decision deserves attention. In *Newby* v. *Alto Riviera Apartments* (1976) 60 Cal.App.3d 288 [131 Cal.Rptr. 537], a tenant brought suit against her landlord for damages for an alleged threat of eviction. She complained that the landlord acted in retaliation for her organization of tenants to object to a rent increase. The trial court granted a judgment of nonsuit as to that cause of action. The Court of Appeal affirmed on that point. Noting that former Civil Code section 1942.5 created only "[a] limited cause of action for retaliatory eviction," the court went on to say that "[t]he rights protected under the chapter relate to the fitness of buildings for human occupancy and the lessor's duty to repair. . . . [A]ppellant was not demanding that premises be made habitable within the meaning of section 1942.5; she was organizing tenants to object to a rent increase. Section 1942.5 gives no protection from retaliation for such activity. Therefore, appellant presented no evidence of retaliatory eviction in violation of Civil Code section 1942.5." (*Id.,* at p. 293.)

E. *The New Civil Code Section 1942.5*

In 1979 the Legislature repealed Civil Code section 1942.5 and reenacted it with amendments. (Stats., 1979, ch. 652, § 2, p. 2005.) "The time period during which a tenant is protected was extended, and the grounds for which retaliation is prohibited were enlarged." (*Barela* v. *Superior Court, supra,*

30 Cal.3d at p. 250.) The full text of the new statute is set forth in the margin.[7] Among others, the new statute incorporates the following changes:

[7]Civil Code section 1942.5 now reads as follows: "(a) If the lessor retaliates against the lessee because of the exercise by the lessee of his rights under this chapter or because of his complaint to an appropriate agency as to tenantability of a dwelling, and if the lessee of a dwelling is not in default as to the payment of his rent, the lessor may not recover possession of a dwelling in any action or proceeding, cause the lessee to quit involuntarily, increase the rent, or decrease any services within 180 days:

"(1) After the date upon which the lessee, in good faith, has given notice pursuant to Section 1942, or has made an oral complaint to the lessor regarding tenantability; or

"(2) After the date upon which the lessee, in good faith, has filed a written complaint, or an oral complaint which is registered or otherwise recorded in writing, with an appropriate agency, of which the lessor has notice, for the purpose of obtaining correction of a condition relating to tenantability; or

"(3) After the date of an inspection or issuance of a citation, resulting from a complaint described in paragraph (2) of which the lessor did not have notice; or

"(4) After the filing of appropriate documents commencing a judicial or arbitration proceeding involving the issue of tenantability; or

"(5) After entry of judgment or the signing of an arbitration award, if any, when in the judicial proceeding or arbitration the issue of tenantability is determined adversely to the lessor.

"In each instance, the 180-day period shall run from the latest applicable date referred to in paragraphs (1) to (5), inclusive.

"(b) A lessee may not invoke the provisions of subdivision (a) more than once in any 12-month period.

"(c) It shall be unlawful for a lessor to increase rent, decrease services, cause a lessee to quit involuntarily, bring an action to recover possession, or threaten to do any of such acts, for the purpose of retaliating against the lessee because he or she has lawfully organized or participated in a lessees' association or an organization advocating lessees' rights or has lawfully and peaceably exercised any rights under the law. In an action brought by or against the lessee pursuant to this subdivision, the lessee shall bear the burden of producing evidence that the lessor's conduct was, in fact, retaliatory.

"(d) Nothing in this section shall be construed as limiting in any way the exercise by the lessor of his rights under any lease or agreement or any law pertaining to the hiring of property or his right to do any of the acts described in subdivision (a) or (c) for any lawful cause. Any waiver by a lessee of his rights under this section shall be void as contrary to public policy.

"(e) Notwithstanding the provisions of subdivisions (a) to (d), inclusive, a lessor may recover possession of a dwelling and do any of the other acts described in subdivision (a) within the period or periods prescribed therein, or within subdivision (c), if the notice of termination, rent increase, or other act, and any pleading or statement of issues in an arbitration, if any, states the ground upon which the lessor, in good faith, seeks to recover possession, increase rent, or do any of the other acts described in subdivision (a) or (c). If such statement be controverted, the lessor shall establish its truth at the trial or other hearing.

"(f) Any lessor or agent of a lessor who violates this section shall be liable to the lessee in a civil action for all of the following:

"(1) The actual damages sustained by the lessee.

"(2) Punitive damages in an amount of not less than one hundred dollars ($100) nor more than one thousand dollars ($1,000) for each retaliatory act where the lessor or agent has been guilty of fraud, oppression, or malice with respect to such act.

"(g) In any action brought for damages for retaliatory eviction, the court shall award reasonable attorney's fees to the prevailing party if either party requests attorney's fees upon the initiation of the action.

"(h) The remedies provided by this section shall be in addition to any other remedies provided by statutory or decisional law."

In subdivision (a) the wording of the opening line was changed *from* "If the lessor has as his dominant purpose retaliation against the lessee because of" *to* "If the lessor retaliates against the lessee because of." We do not believe that this change in any way lessened the tenant's burden of proving the landlord's retaliatory motive by a preponderance of the evidence. As originally drafted in 1979, Assembly Bill No. 771 (the source of the new statute) contained a subdivision (b) which provided that if the evidence showed that an alleged act of retaliation occurred within 180 days of the tenant's exercise of legal rights, such evidence created "a rebuttable presumption affecting the burden of producing evidence that the landlord's conduct was retaliatory."[8] That subdivision (b) was *deleted* by the Assembly in an amendment made May 30, 1979. At the same time, the opening line of subdivision (a) was changed as indicated above. By specifically discarding a rebuttable presumption in favor of the tenant, the Legislature left the burden of proving retaliatory motive where it was before—on the tenant, by a preponderance of the evidence.

The new statute also incorporates a new subdivision (c), which deals with retaliatory action against a tenant who "has lawfully organized or participated in a lessees' association or an organization advocating lessees' rights or has lawfully and peaceably exercised any rights under the law." The subdivision evidently was intended to fill the gap recognized in *Newby* v. *Alto Riviera Apartments, supra,* 60 Cal.App.3d at page 293, and to incorporate into the statute the concept expressed in *S.P. Growers Assn.* v. *Rodriguez, supra,* 17 Cal.3d at pages 724-730. It also provides the tenant with an affirmative cause of action against the landlord for retaliatory eviction, in accord with *Aweeka* v. *Bonds, supra,* 20 Cal.App.3d at page 281. The new subdivision (c) concludes thus: "In an action brought by or against the lessee pursuant to this subdivision, the lessee shall bear the burden of producing evidence that the lessor's conduct was, in fact, retaliatory." This language reinforces our interpretation of subdivision (a). It would be incongruous to suggest that a tenant who claims retaliation for his complaint about tenantability (under subd. (a)) should have any lighter burden of proof than a tenant who claims retaliation for his participation in a lessees' association (under subd. (c)). If the latter has the burden of proving retaliatory motive, so has the former.

---

[8]As originally drafted, subdivision (b) read as follows: "[¶] In an action brought by or against the tenant, the introduction of evidence which shows that an alleged act of retaliation occurred within 180 days after any of the events specified in paragraphs (1) to (6), inclusive, of subdivision (a) creates a rebuttable presumption affecting the burden of producing evidence that the landlord's conduct was retaliatory. If the evidence introduced shows that the alleged act of retaliation occurred after that 180-day period, the tenant bears the burden of producing evidence that the landlord's conduct was, in fact, retaliatory. The 180-day period shall commence after the latest occurrence of any of the events specified in paragraphs (1) to (6), inclusive, of subdivision (a)."

New subdivisions (d) and (e) are virtually identical to subdivisions (c) and (d) under the old statute. Except for minor conforming changes, the wording of the subdivisions remains intact. The defense of retaliatory eviction is still not available to a tenant who is himself at legal fault. And a landlord still has the burden of pleading and proving a valid "ground" for his action in any case where the tenant controverts that ground.

Finally, the new statute adds a subdivision (h), which provides: "The remedies provided by this section shall be in addition to any other remedies provided by statutory or decisional law." Here the Legislature took cognizance of the common law defense of retaliatory eviction. We cannot think that the Legislature, having recognized the common law defense, intended the burden of proving the statutory defense to be any less than the burden of proving its common law counterpart.

### F. *The Tenants' Arguments*

We turn now to the arguments advanced by the tenants in this case. It is their position that Civil Code section 1942.5 creates a rebuttable presumption of retaliation, either by implication or by the very wording of subdivision (e). They contend that subdivisions (a) and (e) are in conflict, because both deal with the burden of proof of retaliatory motive. Since the burden of proof cannot rest on both the landlord and the tenant, the conflict can only be resolved by construing subdivision (e) as paramount, placing the burden of persuasion of nonretaliatory motive on the landlord. Alternatively, they contend that section 1942.5 creates a rebuttable presumption by implication in any case where the landlord moves against the tenant within the specified 180-day period.

We disagree, for the following reasons:

1. Such a construction of Civil Code section 1942.5 would be directly contrary to the language of Evidence Code sections 500 and 520. Section 500 of the Evidence Code requires the proponent of a fact to prove that fact, "[e]xcept as otherwise provided by law." The Legislature has provided by law, in section 520 of the same code, that "[t]he party claiming that a person is guilty of . . . wrongdoing has the burden of proof on that issue." A tenant who claims his landlord acted with a retaliatory motive accuses the landlord of wrongdoing. Therefore the tenant has the burden of proof on that issue.

2. In *Fisher* v. *City of Berkeley* (1984) 37 Cal.3d 644 [209 Cal.Rptr. 682, 693 P.2d 261], affirmed (1986) — U.S. — [89 L.Ed.2d 206, 106 S.Ct.

1045], the California Supreme Court construed a city rent control ordinance which specified the burden of proof required for a defense of retaliatory eviction. The court concluded that the ordinance by its express terms created a presumption of retaliation which required the landlord to prove, by a preponderance of the evidence, that the eviction was *not* retaliatory. (*Id.*, at p. 696.) The court held that the ordinance was in direct conflict with Evidence Code section 500, and that a municipal ordinance could not qualify as a "law," within the meaning of the proviso "Except as otherwise provided by law" stated at the beginning of that section. The opinion contained no mention whatever of Civil Code section 1942.5. But the court was plainly cognizant of the provisions of that section, having examined and construed it three years before in *Barela* v. *Superior Court, supra,* 30 Cal.3d at pages 249-251. If in fact Civil Code section 1942.5 contained a rebuttable presumption in favor of tenants, the California Supreme Court could not have ruled that the Berkeley ordinance was in conflict with a state statute that "[o]therwise provided by law."

3. As we have seen, in 1979 the Legislature considered including a rebuttable presumption in Civil Code section 1942.5, but then specifically abandoned the idea. We cannot now insert in the statute a presumption expressly rejected by the Legislature. "To do so would not be interpreting the legislative intent but would be a gross example of judicial legislation in contravention of the legislative intent logically implied from the rejection by the Legislature of an identical provision." (*People* v. *Brannon* (1973) 32 Cal.App.3d 971, 977 [108 Cal.Rptr. 620].)

4. Subdivision (c) of the statute provides that a tenant who claims retaliation because of his participation in a tenants' organization "shall bear the burden of producing evidence that the lessor's conduct was, in fact, retaliatory." The quoted language is plainly in accord with the opinion in *Four Seas Inv. Corp.* v. *International Hotel Tenants' Assn., supra,* 81 Cal.App.3d at page 610. "The burden of producing evidence as to a particular fact is initially on the party *with the burden of proof as to that fact.*"[9] (Evid. Code, § 550, subd. (b), italics added.) In imposing the initial "burden of producing evidence" on the tenant who complains of retaliation under subdivision (c), the Legislature evidently intended that such tenant should have the *burden of proof* as to the landlord's retaliatory motive, if any. If a subdivision (c) tenant has the burden of proof, we cannot perceive why a subdivision (a) tenant—the person who claims retaliation because of

---

[9]While the burden of producing evidence may shift from one party to another during the course of a trial, the burden of proof—i.e., the burden of persuasion—never changes. (*Bonneau* v. *North Shore R. R. Co.* (1907) 152 Cal. 406, 410 [93 P. 106]; accord, *Hardin* v. *San Jose City Lines, Inc.* (1953) 41 Cal.2d 432, 437 [260 P.2d 63]. See Cal. Law Revision Com. comment to Evid. Code, § 550; Jefferson, Cal. Evidence (2d ed. 1982), § 46.2, rule (4).)

his own complaint about habitability—should have any lesser burden. There appears to be no rational basis for favoring one class of tenant over the other. Were we to allot a rebuttable presumption in favor of a "subdivision (a) tenant," while denying the presumption to a "subdivision (c) tenant," the result would border on the absurd. ■ Statutory construction which leads to absurd consequences should be avoided. (*People* v. *Colver* (1980) 107 Cal.App.3d 277, 285 [165 Cal.Rptr. 614]; *In re O'Neil* (1977) 74 Cal.App.3d 120, 123 [141 Cal.Rptr. 338].)

5. From our review of the history surrounding Civil Code section 1942.5, we conclude that in enacting the latest version of the statute the Legislature did not intend to alter the common law rule regarding the burden of proving retaliatory motive. As the common law defense expanded in scope, so did the statutory defense. The cases which expanded the common law defense did not in any way alter the burden of proof. The Legislature itself, in subdivision (h) of the latest version of Civil Code section 1942.5, has said that "[t]he remedies provided by this section shall be in addition to any other remedies provided by statutory or decisional law." Consequently, "[w]here, as here, [the] legislation does not expressly purport to depart from or alter the common law, it will be construed in light of common law principles bearing upon the same subject." (*Leslie Salt Co.* v. *San Francisco Bay Conservation etc. Com.* (1984) 153 Cal.App.3d 605, 618-619 [200 Cal.Rptr. 575].)

■ To sum up: In an unlawful detainer action, where the defense of retaliatory eviction is asserted pursuant to Civil Code section 1942.5, the tenant has the overall burden of proving his landlord's retaliatory motive by a preponderance of the evidence. If the landlord takes action for a valid reason not listed in the unlawful detainer statutes, he must give notice to the tenant of the ground upon which he proceeds; and if the tenant controverts that ground, the landlord has the burden of proving its existence by a preponderance of the evidence.

## INSTRUCTIONS

We turn now to a consideration of the instructions given and refused in this case.

The tenants requested an instruction which would have informed the jury that proof of certain preliminary facts created a rebuttable presumption of retaliatory motive, and shifted the burden of proof to the landlord. For reasons which we have set forth *ante,* we conclude that Civil Code section 1942.5 creates no rebuttable presumption in favor of the tenants, and therefore the trial court quite properly refused to give the requested instruction.

The text of the instructions actually given on the subject of burden of proof is set forth in the margin.[10] The instructions advised the jury that the tenants had the burden of proving, by a preponderance of the evidence, that the landlord acted in retaliation in serving the notices of termination. For reasons we already have given, we conclude that the instructions correctly stated the law on that point.

■ The instructions also advised the jury that the landlord had the burden of proving its "belief in good faith of the truth of the grounds stated in the Notice which the landlord sought to recover, namely Little Waco was being closed because of the replacement of the entire water system as required by the County of Monterey, made operation of Little Waco economically unfeasible." This portion of the instructions placed upon the landlord the burden not only of establishing the ground upon which it acted, but also

---

[10]The instructions read as follows: "The law allows a landlord to regain possession of his property by terminating the tenancy of his tenant by following certain sections. If the landlord rents residential property to a tenant on a month-to-month basis, as in this case, the landlord, by giving a thirty-day Notice to Quit, and such notice was given in this case to each of the defendants, however the law does not permit the landlord to evict his tenant for illegal purposes. Retaliation against the tenant is an illegal purpose. In this case the eight defendants have alleged that the landlords are evicting them for the purpose of retaliation. [¶] The burden is on the defendants to establish by a preponderance of the evidence that plaintiffs are attempting to evict them to retaliate against defendants for making the report to the Monterey County Health Department and filing the lawsuit in Superior Court for injunction and not because of the reasons stated in Plaintiffs' Notice to Defendants. [¶] Plaintiff, as lessor of dwellings is the same as a landlord—excuse me, that is repetitive. [¶] In this action the plaintiff has the burden of establishing by a preponderance of the evidence all of the facts necessary to prove the following issues, one, that plaintiffs had a belief in good faith of the truth of the grounds stated in the Notice upon which the landlord sought to recover, namely Little Waco was being closed because of the replacement of the entire water system as required by the County of Monterey, made operation of Little Waco economically unfeasible. [¶] The defendant has the burden of establishing by a preponderance of the evidence all of the facts necessary—the defendants, plural, necessary to prove the following issues, one, that in serving the Notice terminating defendants' tenancy, plaintiff was retaliating against defendants because of the exercise by defendants of their right to complain to an appropriate agency as to the tenantability of the dwellings and for filing the lawsuit for injunction. [¶] By a preponderance of the evidence is meant such evidence as, when weighed with that opposed to it, has more convincing force and the greater probability of truth. In the event that the evidence is evenly balanced so that you are unable to say that the evidence on either side of an issue preponderates, then your finding upon that issue must be against the party who has the burden of proving it. [¶] In determining whether an issue has been proven by a preponderance of the evidence, you should consider all of the evidence bearing upon that issue regardless of who produced it. [¶] If you find that defendants have not established by a preponderance of the evidence that plaintiff is attempting to evict them to retaliate against the defendants, then plaintiff is entitled to possession of the property in question and you'll return a verdict for the plaintiff. [¶] It is the tenants' burden of proof that they in good faith made a complaint with an appropriate governmental agency by which plaintiff has notice for the purpose of obtaining corrections of conditions relating to habitability of defendants' apartments. Appropriate governmental agency is a public agency which has jurisdiction over the complaint of conditions relating to fitness of the premises for human habitation. [¶] You are instructed as a matter of law that the County Environmental Health Department is such an agency."

of establishing its motivation. In effect, the jury was instructed that the landlord had to prove by a preponderance of the evidence that its motive was not retaliatory. But as we have seen, the burden was on the tenants to establish retaliatory motive by a preponderance of the evidence.

Nevertheless, we do not perceive that the tenants suffered any prejudice from the erroneous portion of the instructions. That portion placed upon the landlord a heavier burden of proof than it was required to bear. The jury found for the landlord. It does not appear that in the absence of the error, the jury would have rendered a verdict more favorable to the tenants. (Cal. Const., art. VI, § 13; Code Civ. Proc., § 475; *People* v. *Watson* (1956) 46 Cal.2d 818, 836-837 [299 P.2d 243].)

### DISPOSITION

The judgment of the municipal court is affirmed.

A petition for a rehearing was denied January 8, 1986.