[No. S096161. Aug. 11, 2003.]

JOEL DROUET, Petitioner, v.
THE SUPERIOR COURT OF THE CITY AND COUNTY OF SAN
FRANCISCO, Respondent;
JIM BROUSTIS et al., Real Parties in Interest.

584

586

## COUNSEL

Law Offices of Andrew M. Zacks, Andrew M. Zacks and James B. Kraus for Petitioner and Appellant.

R. S. Radford for Pacific Legal Foundation as Amicus Curiae on behalf of Petitioner.

Law Offices of Paul F. Utrecht and Paul F. Utrecht for Small Property Owners of San Francisco as Amicus Curiae on behalf of Petitioner.

Wiegel & Fried and Clifford E. Fried for San Francisco Apartment Association as Amicus Curiae on behalf of Petitioner.

Law Offices of Rosario Perry and Rosario Perry for Action Apartment Association as Amicus Curiae on behalf of Petitioner.

No appearance for Respondent.

Law Offices of William M. Simpich, William M. Simpich; Law Offices of Philip D. Rapier, Philip D. Rapier; Law Offices of Marc S. Janowitz and Marc S. Janowitz for Real Parties in Interest.

Brad Seligman and Jennifer Cynn for The Impact Fund, Protection and Advocacy, Inc., Legal Aid Foundation of Los Angeles, Public Interest Law Project, East Bay Community Law Center, Lawyers' Committee for Civil Rights of the San Francisco Bay Area and the American Civil Liberties Union of Northern California as Amici Curiae on behalf of Real Parties in Interest.

Gen Fujioka; Tom Weathered; Robert Capistrano; Roderick T. Field; and Dara Schur for Asian Law Caucus, Bay Area Legal Aid, The Los Angeles Housing Law Project and The Western Center on Law & Poverty as Amici Curiae on behalf of Real Parties in Interest.

Daniel Berko as Amicus Curiae on behalf of Real Parties in Interest.

---

## OPINION

**BAXTER, J.**—The Ellis Act (Gov. Code, § 7060 et seq.) provides that no statute, ordinance, regulation, or administrative action "shall . . . compel the owner of any residential real property to offer, or to continue to offer, accommodations in the property for rent or lease." (Gov. Code, § 7060, subd. (a).) A landlord who complies with the Ellis Act may therefore go out of the residential rental business by withdrawing the rental property from the market. (*Los Angeles Lincoln Place Investors, Ltd. v. City of Los Angeles* (1997) 54 Cal.App.4th 53, 61 [62 Cal.Rptr.2d 600].) If necessary, the landlord may institute an action for unlawful detainer to evict the tenants and recover possession of the property. (Gov. Code, § 7060.6.)

In unlawful detainer actions, tenants generally may assert legal or equitable defenses that "directly relate to the issue of possession and which, if established, would result in the tenant's retention of the premises." (*Green v. Superior Court* (1974) 10 Cal.3d 616, 633 [111 Cal.Rptr. 704, 517 P.2d 1168].) The defense of retaliatory eviction, codified at Civil Code section 1942.5 (section 1942.5), is one such defense. This defense bars a landlord from recovering possession of the dwelling in an unlawful detainer action where recovery is "for the purpose of retaliating" against the tenant because of his or her lawful and peaceable exercise of any rights under the law (§ 1942.5, subd. (c)) or "because of" his or her complaints regarding tenantability (*id.*, subd. (a)).

In this case, the tenants have asserted the statutory defense of retaliatory eviction in an unlawful detainer proceeding instituted by the landlord under the Ellis Act. In their view, section 1942.5 can force a landlord to continue to offer the property for rent or lease if the landlord's decision to withdraw the property is motivated by a desire to retaliate against the tenants in the ways

prohibited by subdivisions (a) and (c). The landlord, on the other hand, counters that he is entitled to exit the rental business, notwithstanding an allegation of retaliation for tenant conduct, under section 1942.5, subdivision (d), which provides that "[n]othing in this section shall be construed as limiting in any way the exercise by the lessor of his rights under . . . any law pertaining to the hiring of property or his right to do any of the acts described in subdivision (a) or (c) for any lawful cause."

■ We find that the Ellis Act qualifies as a "law pertaining to the hiring of property" under section 1942.5, subdivision (d), and that a landlord's withdrawal of the property from the market is an exercise of " 'the right to go out of the rental business' " (*First Presbyterian Church v. City of Berkeley* (1997) 59 Cal.App.4th 1241, 1253 [69 Cal.Rptr.2d 710]) under that law. ■ We further conclude, in accordance with subdivisions (d) and (e) of section 1942.5, that a landlord's bona fide intent to withdraw the property from the rental market under the Ellis Act will defeat the statutory defense of retaliatory eviction. Because the trial court did not consider the landlord's motion for summary adjudication under this standard, we reverse the Court of Appeal, which had issued a writ of mandate directing the superior court to grant the landlord's motion for summary adjudication, with directions to remand the matter to the superior court for further proceedings consistent with this opinion.

## BACKGROUND

Petitioner Joel Drouet (Landlord) owns a two-unit apartment building at 378–380 San Carlos Street in San Francisco. Real parties Jim Broustis and Ivy McClelland (Tenants) occupy the unit at 378 San Carlos Street on a month-to-month basis. Broustis has lived in the unit since 1988; McClelland joined him in early 1999. Over the years, Landlord and Broustis have had several conflicts involving the tenancy. Tenants have alleged, for example, that Landlord illegally attempted to raise the rent, overcharged for utilities, refused to pay interest on security deposits, and violated the lease by refusing to permit Broustis to have a roommate. In April 1999, when Tenants discovered Landlord had failed to pay his share of the garbage bill, they informed him they planned to deduct this amount from their rent. Around the same time, they notified Landlord of a leaking sewage drain and shower wall.

Landlord did not make the requested repairs. Instead, on August 5, 1999, Landlord commenced Ellis Act proceedings on the San Carlos Street units by filing a "Notice of Intent to Withdraw Residential Units from the Rental Market" with the San Francisco Residential Rent Stabilization and Arbitration Board. (Gov. Code, § 7060.4; S.F. Admin. Code, § 37.9A, subd. (f).) That same day, Landlord served Tenants with written notice terminating the tenancy

(Civ. Code, § 1946) and requiring them to quit the premises and deliver up possession within 60 days. The notice of intent and a memorandum regarding withdrawal of the units from rent were attached to the notice.

The parties do not dispute that Landlord complied with all Ellis Act procedures. Nonetheless, Tenants did not quit the premises.

Consequently, on October 6, 1999, Landlord filed a complaint for unlawful detainer in the Superior Court for the City and County of San Francisco. Tenants answered the complaint and alleged four affirmative defenses, including retaliatory eviction. Landlord moved for summary adjudication on each of the defenses. The superior court granted the motion in part but, without considering whether Landlord's invocation of the Ellis Act was bona fide, denied it with respect to the defense of retaliatory eviction.

Landlord sought a writ of mandate in the appellate division of the superior court to compel the trial court to set aside the denial of summary adjudication, alleging that the defense of retaliatory eviction is unavailable as a matter of law in unlawful detainer proceedings under the Ellis Act. After briefing and oral argument, the appellate division agreed with Landlord and granted the petition for writ of mandate. It said: "When a landlord has complied with all procedures for withdrawing his rental units from the rental market, his motive for withdrawing the units is irrelevant." The Court of Appeal ordered the case transferred on its own motion (Cal. Rules of Court, rule 62(a)) and, in a published opinion, agreed with the appellate division: "[I]n unlawful detainer proceedings properly commenced under the Ellis Act, a tenant may not raise an affirmative defense of retaliatory eviction to prevent displacement."

## DISCUSSION

In a writ proceeding challenging the denial of summary adjudication, we review the trial court's ruling de novo. (*Buss v. Superior Court* (2001) 16 Cal.4th 35, 60 [65 Cal.Rptr.2d 366, 939 P.2d 766].) Since there are no disputed issues of fact, we consider only the legal effect of Civil Code section 1942.5 in an unlawful detainer proceeding under the Ellis Act. We examine each statutory scheme in turn.

### A. *The Ellis Act*

The Ellis Act (Act) sets forth the procedure by which a landlord may go out of business by removing rental units from the market. Its intent is "to supersede any holding or portion of any holding" in *Nash v. City of Santa Monica* (1984) 37 Cal.3d 97 [207 Cal.Rptr. 285, 688 P.2d 894] (*Nash*) "to the

extent that the holding, or portion of the holding, conflicts with this chapter, so as to permit landlords to go out of business." (Gov. Code, § 7060.7.)

*Nash* involved a section of the Santa Monica City Charter that prohibited landlords from withdrawing rental units from the market absent a removal permit from the Santa Monica Rent Control Board. To obtain a removal permit, a landlord had to show that removal would not and could not displace low- or moderate-income persons, that removal would not adversely affect the city's supply of housing, and that the landlord could not make a fair return on investment by retaining the unit. (*Nash, supra,* 37 Cal.3d at pp. 100–101, fn. 3.) In *Nash,* we rejected a due process challenge to this procedure (*id.* at p. 103), even though (as the dissent observed) it compelled a landlord "to remain in business against his will" and gave him "only the alternative of a forced sale." (*Id.* at p. 111 (dis. opn. of Mosk, J.).)

■ In contrast to *Nash,* the Act provides that no statute, ordinance, regulation, or administrative action shall "compel the owner of any residential real property to offer, or to continue to offer, accommodations in the property for rent or lease" (Gov. Code, § 7060, subd. (a)), even if the landlord could make a fair return, the property is habitable, and the landlord lacks approval for future use of the land. (*Los Angeles Lincoln Place Investors, Ltd. v. City of Los Angeles, supra,* 54 Cal.App.4th at p. 61.)

The right articulated in the Act, however, is expressly made subject to certain other laws. For example, the Act is not intended to interfere with local authority over land use, including regulation of the conversion to condominiums or nonresidential use (Gov. Code, § 7060.7, subd. (a)), or to preempt local environmental or land use regulations governing the demolition or redevelopment of the property (*id.,* subd. (b)). Nor does the Act permit a landlord to withdraw from rent or lease less than all of the accommodations in a building. (*Id.,* subd. (d).)

The Act further states that if the units withdrawn from the market are subsequently offered again for rent, local governments may require landlords to offer the units at the lawful rent in effect at the time the notice of intent to withdraw was filed. (Gov. Code, § 7060.2, subd. (a)(1).) Local governments may also require landlords who intend to re-rent the units within 10 years after their withdrawal from the market to offer the units first to the displaced tenants. (*Id.,* subd. (c).)

The Act also specifies the means by which local governments may require landlords to provide notice of their intention to withdraw the units from the rental market. (Gov. Code, § 7060.4.) The accommodations can be withdrawn

from rent or lease 120 days after delivery in person or by first class mail of the notice to the appropriate public entity. (*Id.,* subd. (b).)[1]

If (as here) the tenants do not quit the premises by the date the accommodations have been withdrawn from the market, the landlord may institute an action for unlawful detainer. The Act provides that the tenant in such a proceeding "may assert by way of defense that the owner has not complied with the applicable provisions of this chapter . . . ." (Gov. Code, § 7060.6.) The Act also states that it does not supersede "any provision of . . . Title 5 (commencing with Section 1925) of Part 4 of Division 3 of the Civil Code . . . ." (Gov. Code, § 7060.1, subd. (d).) Title 5 includes Civil Code section 1942.5, which (as stated) contains a prohibition against retaliatory evictions. And, while permitting the landlord to go out of business, the Act is not "otherwise" intended to "[o]verride procedural protections designed to prevent abuse of the right to evict tenants." (Gov. Code, § 7060.7, subd. (c).)

### B. *Civil Code Section 1942.5*

Section 1942.5 was added by Statutes of 1970, chapter 1280, section 5, pages 2316–2317. After its enactment but before its effective date, we recognized the common law doctrine of retaliatory eviction as a defense in unlawful detainer proceedings. (*Schweiger v. Superior Court* (1970) 3 Cal.3d 507 [90 Cal.Rptr. 729, 476 P.2d 97] (*Schweiger*).) At that time, few appellate courts had considered the availability of the defense. (*Id.* at p. 512.) We therefore examined closely the leading authority in the area, *Edwards v. Habib* (D.C. Cir. 1968) 130 U.S.App.D.C. 126 [397 F.2d 687], in which the tenant's complaints of sanitation and housing code violations in her apartment were met by the landlord's notice to vacate the premises. Judge Skelly Wright's opinion in *Edwards* observed that " '[e]ffective implementation and enforcement of the codes obviously depend in part on private initiative in the reporting of violations. . . . To permit retaliatory evictions . . . would clearly frustrate the effectiveness of the housing code as a means of upgrading the quality of housing.' " (*Schweiger, supra,* 3 Cal.3d at p. 512, quoting *Edwards v. Habib, supra,* 397 F.2d at pp. 700–701.) An eviction under such circumstances, Judge Wright reasoned, would not only punish the tenant for a complaint that she had a constitutional right to make " 'but also would stand as a warning to others that they dare not be so bold, a result which, from the authorization of the housing code, we think Congress affirmatively sought to avoid.' " (*Schweiger, supra,* at p. 512, quoting *Edwards v. Habib, supra,* 397 F.2d at p. 701.)

---

[1] At the time pertinent to these proceedings, the statute permitted accommodations to be withdrawn 60 days from the date of notice. (Gov. Code, § 7060.4, former subd. (a), added by Stats. 1985, ch. 1509, § 1, p. 5564.)

Applying this "persuasive reasoning" to our own state (*Schweiger, supra,* 3 Cal.3d at p. 513), we chose "to recognize in unlawful detainer actions a defense that the eviction is sought in retaliation for the exercise of statutory rights by the tenant." (*Id.* at p. 517.) We later commented that the substance of this common law defense was codified in section 1942.5 (*Barela v. Superior Court* (1981) 30 Cal.3d 244, 249 [178 Cal.Rptr. 618, 636 P.2d 582]), which had been enacted prior to *Schweiger* but did not become effective until the following year. (*Schweiger, supra,* 3 Cal.3d at p. 516, fn. 4.)

In 1979, the Legislature repealed section 1942.5 and reenacted it with provisions that extended the time period during which a tenant is protected from retaliatory eviction and that enlarged the prohibited forms of retaliation. (Stats. 1979, ch. 652, § 2, p. 2005; *Barela v. Superior Court, supra,* 30 Cal.3d at p. 250.) In pertinent part, section 1942.5 now provides: "(a) If the lessor retaliates against the lessee because of the exercise by the lessee of his rights under this chapter or because of his complaint to an appropriate agency as to tenantability of a dwelling, and if the lessee of a dwelling is not in default as to the payment of his rent, the lessor may not recover possession of a dwelling in any action or proceeding, cause the lessee to quit involuntarily, increase the rent, or decrease any services within 180 days: (1) After the date upon which the lessee, in good faith, has given notice pursuant to Section 1942, or has made an oral complaint to the lessor regarding tenantability; [¶] . . . [¶] (c) It shall be unlawful for a lessor to increase rent, decrease services, cause a lessee to quit involuntarily, bring an action to recover possession, or threaten to do any of such acts, for the purpose of retaliating against the lessee because he or she has . . . lawfully and peaceably exercised any rights under the law. In an action brought by or against the lessee pursuant to this subdivision, the lessee shall bear the burden of producing evidence that the lessor's conduct was, in fact, retaliatory. [¶] (d) Nothing in this section shall be construed as limiting in any way the exercise by the lessor of his rights under any lease or agreement or any law pertaining to the hiring of property or his right to do any of the acts described in subdivision (a) or (c) for any lawful cause. . . . [¶] (e) Notwithstanding the provisions of subdivisions (a) to (d), inclusive, a lessor may recover possession of a dwelling and do any of the other acts described in subdivision (a) within the period or periods prescribed therein, or within subdivision (c), if the notice of termination, rent increase, or other act . . . states the ground upon which the lessor, in good faith, seeks to recover possession, increase rent, or do any of the other acts described in subdivision (a) or (c). If such statement be controverted, the lessor shall establish its truth at the trial or other hearing."

## C. *Harmonizing Landlord's Right to Withdraw the Property from the Rental Market Under the Ellis Act with Tenants' Defense of Retaliatory Eviction Under Civil Code Section 1942.5*

Government Code section 7060.1, subdivision (d), provides that nothing in the Ellis Act "[s]upersedes any provision of . . . Title 5 (commencing with Section 1925) of Part 4 of Division 3 of the Civil Code . . . ." The Court of Appeal wrestled with the meaning of this subdivision, deciding ultimately that "[i]n the Ellis Act context it would be a superficial act of interpretation to conclude that the use of the term 'supersede,' in reference to a broad and detailed statutory scheme of the Civil Code, necessarily meant that a particular eviction defense—found in a single statute—remained applicable. The Legislature did not single out section 1942.5, but broadly referenced title 5, which includes sections 1925 through 1997.270 [of the Civil Code]." After weighing the competing policies of the two statutes, the Court of Appeal deemed it "unreasonable to conclude that in the process of making broad references to entire systems of statutes in the Ellis Act, the Legislature intended the defense of retaliatory eviction to apply to unlawful detainer proceedings under the Act." Landlord asks us to embrace this reasoning and find that the Ellis Act superseded section 1942.5.

To the extent Landlord invites us to ignore the language of Government Code section 7060.1, subdivision (d), and instead reweigh allegedly competing public policies as they relate to section 1942.5, we must decline the invitation. The judicial branch " ' "has no power to rewrite the statute so as to make it conform to a presumed intention which is not expressed." ' " (*Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 59 [124 Cal.Rptr.2d 507, 52 P.3d 685].) ■ We therefore apply the plain language of Government Code section 7060.1, subdivision (d), and conclude the Act did not supersede section 1942.5.

It does not follow, however, that section 1942.5 should be read to supersede the Act. ■ When the Legislature provides that one law does not supersede another, the two are to be construed *together*. (*San Mateo City School Dist. v. Public Employment Relations Bd.* (1983) 33 Cal.3d 850, 864–865 [191 Cal.Rptr. 800, 663 P.2d 523] [Education Code section 3540, which says that "[n]othing contained herein shall be deemed to supersede other provisions of the Education Code," should be construed "in harmony with . . . existing sections of the Education Code"]; *Taylor v. Albion Lumber Co.* (1917) 176 Cal. 347, 350–351 [168 P. 348] [" 'Section 1970 of the Civil Code is to be construed with [Code of Civil Procedure] section 377, not as superseding it' "]; *Masonite Corp. v. County of Mendocino Air Quality Management Dist.* (1996) 42 Cal.App.4th 436, 451, fn. 11 [49 Cal.Rptr.2d 639].) The parties therefore agree that our task is to harmonize the two

schemes, provided that in doing so section 1942.5 is not " 'replaced, set aside or annulled by' " the Ellis Act. (*San Mateo City School Dist. v. Public Employment Relations Bd.*, *supra*, 33 Cal.3d at p. 864; accord, Black's Law Dict. (7th ed. 1999) p. 1452 [defining "supersede" as "annul, make void, or repeal by taking the place of"].) For the reasons set forth below, we do not find that permitting a landlord to invoke in good faith his or her right to withdraw the property from the rental market would replace, set aside, or annul section 1942.5.

Our analysis must begin with the language of section 1942.5 itself.

Tenants claim they are protected under section 1942.5, subdivision (a)(1), which bars a landlord from retaliating against a tenant within 180 days of the tenant's oral complaint regarding tenantability, as well as subdivision (c), which bars a landlord from retaliating against a tenant for the lawful and peaceable exercise of any rights under the law. In this proceeding, Landlord does not dispute that Tenants made an oral complaint or otherwise lawfully and peaceably exercised their rights under the law—nor does Landlord deny that he seeks to recover possession "because of" the oral complaint (§ 1942.5, subd. (a)) or "for the purpose of retaliating" against Tenants' exercise of their rights (*id.*, subd. (c)). Landlord claims instead that the defense of retaliatory eviction can be defeated by proof that he has in good faith invoked his rights under the Ellis Act to withdraw the subject property from the rental market. His claim is based not on the theory that the Act has replaced, set aside, or annulled section 1942.5, but *on the language of section 1942.5 itself* and, in particular, on subdivision (d), which states in relevant part that "[n]othing in this section shall be construed as limiting·in any way the exercise by the lessor of his rights under any lease or agreement or any law pertaining to the hiring of property or his right to do any of the acts described in subdivision (a) or (c) for any lawful cause." Landlord reasons that subdivision (d) constitutes an exception to the prohibitions set forth in subdivision (a) and (c).

Landlord's interpretation is consistent with the language of the statute. Section 1942.5, subdivision (d), provides that, in specified circumstances, a landlord *may* "do any of the acts described in subdivision (a) or (c)" and that, in those circumstances, "[n]othing" in section 1942.5 "shall be construed" as limiting the landlord "in any way." Subdivision (d) then describes these circumstances: when the landlord exercises his or her rights "under any lease or agreement or any law pertaining to the hiring of property" or acts "for any lawful cause."

Landlord's interpretation is also consistent with the case law. "Subdivision (c) of the statute [now reenacted with only conforming changes as subd. (d)]

provided that the landlord, *even if he had retaliation in mind*, could nevertheless prevail if the tenant violated 'any lease or agreement or any law pertaining to the hiring of property . . . .' For example, if the tenant was in default in payment of the agreed rent, or if he violated a covenant in a lease, or if he committed waste or maintained a nuisance, the landlord could move to evict him even though the tenant had complained about the habitability of the premises." (*Western Land Office, Inc. v. Cervantes* (1985) 175 Cal.App.3d 724, 733 [220 Cal.Rptr. 784] (*Cervantes*), italics added.) ■ We therefore agree with Landlord that section 1942.5, subdivision (d), constitutes an exception to the limitations on landlord conduct set forth in subdivisions (a) and (c). (*Cervantes, supra*, 175 Cal.App.3d at p. 733.)

But does a landlord's withdrawal of property from the rental market under the Ellis Act constitute an exercise of rights under a law pertaining to the hiring of property? Both Landlord and Tenants agree that the Act, which is designed "to permit landlords to go out of business" (Gov. Code, § 7060.7), is such a law. ■ We therefore conclude that a landlord's withdrawal of rental property from the market under the Act constitutes the exercise of a right under a law pertaining to the hiring of property under section 1942.5, subdivision (d).

The parties disagree vigorously over the significance of this conclusion. Landlord and some of his amici curiae contend that this is the end of the analysis—i.e., that once the landlord has complied with the Act's procedural requirements, the exception set forth in section 1942.5, subdivision (d), has been satisfied, and the statutory defense of retaliatory eviction has been overcome. Tenants and their amici curiae, on the other hand, contend that even those landlords who seek refuge under subdivision (d) must nonetheless demonstrate an absence of retaliatory motive in order to prevail in the unlawful detainer action.

Neither party's construction is consistent with the statute. We instead find guidance in section 1942.5, subdivision (e), which states that "[n]otwithstanding the provisions of subdivisions (a) to (d), inclusive, a lessor may recover possession of a dwelling and do any of the other acts described in subdivision (a) within the period or periods prescribed therein, or within subdivision (c), . . . if the notice of termination . . . states the ground upon which the lessor, in good faith, seeks to recover possession . . . . If such statement be controverted, the lessor shall establish its truth at the trial or other hearing." (Italics added.) Landlord thus errs in terminating the analysis at subdivision (d), since subdivision (e) expressly applies *notwithstanding* the provisions of subdivisions (a) to (d) *inclusive*. Accordingly, landlords must assert their invocation of the Ellis Act "in good faith." (§ 1942.5, subd. (e).) Tenants, on the other hand, err in assuming that a landlord who has invoked

the Ellis Act, a law pertaining to the hiring of property under subdivision (d), must prove not only that the Act has been invoked in good faith but also that the Act has not been invoked for a retaliatory purpose. Such a requirement would nullify the language in subdivision (d) that "[n]othing in this section shall be construed as limiting in any way the exercise by the lessor of his rights under . . . any law pertaining to the hiring of property." In our view, the proper way to construe the statute when a landlord seeks to evict a tenant under the Ellis Act, and the tenant answers by invoking the retaliatory eviction defense under section 1942.5, is to hold that the landlord may nonetheless prevail by asserting a good faith—i.e., a bona fide—intent to withdraw the property from the rental market. If the tenant controverts the landlord's good faith, the landlord must establish the existence of the bona fide intent at a trial or hearing by a preponderance of the evidence. (See *Cervantes, supra,* 175 Cal.App.3d at p. 742.)[2] This construction best harmonizes the Act with the text of the retaliatory eviction statute.

We therefore find no statutory basis for Tenants' contention that Landlord should be compelled to prove not merely that he has a bona fide intent to go out of business but *also* that this bona fide intent was not motivated by the tenant's exercise of rights under subdivisions (a) and (c) of section 1942.5. Indeed, neither Tenants nor the concurring and dissenting opinion has identified a single jurisdiction in this country that has sustained a retaliatory eviction defense—or what might more accurately be termed a retaliatory *withdrawal* defense—where a landlord seeks to take a building off the market. (Cf. *California Livestock Production Credit Assn. v. Sutfin* (1985) 165 Cal.App.3d 136, 143 [211 Cal.Rptr. 152] [claim of retaliation is not a defense in unlawful detainer action based on foreclosure of property]; *Carol Rickert & Associates v. Law* (2002) 2002 NMCA 96 [132 N.M. 687, 54 P.3d 91, 97–98] [claim of retaliation is not a defense in unlawful detainer action based on landlord's decision not to remain in the federal government's former Section 8 housing program]; see generally *Robinson v. Diamond Housing Corporation* (D.C. Cir. 1972) 150 U.S.App.D.C. 17 [463 F.2d 853, 867].) Although we have at times analogized a tenant's defense of retaliatory eviction to an employee's defense of retaliatory termination (e.g., *Barela v. Superior Court, supra,* 30 Cal.3d at pp. 253–254, fn. 8; *Schweiger, supra,* 3 Cal.3d at pp. 515–516), neither Tenants nor the concurring and dissenting opinion identifies a single jurisdiction that has sustained a retaliatory termination defense where the employer was going out of business. (Cf. *Textile Workers v. Darlington Co.* (1965) 380 U.S. 263, 271 [13 L.Ed.2d 827, 85

---

[2] Justice Moreno's concurring and dissenting opinion cites *Cervantes* for the proposition that proof of a bona fide intent may not necessarily establish good faith when the landlord seeks to evict the tenant for a reason *not* specified in section 1942.5, subdivision (d). (See conc. & dis. opn., *post,* at p. 608.) Since this case *does* involve subdivision (d), the dissent's analysis is not pertinent here.

S.Ct. 994] [" 'But none of this can be taken to mean that an employer does not have the absolute right, at all times, to permanently close and go out of business . . . for whatever reason he may choose, whether union animosity or anything else' "].) In sum, neither Tenants nor Justice Moreno has identified anything in the Act or in section 1942.5 to suggest the Legislature intended California to be the first to endorse a "retaliatory withdrawal defense" when a landlord seeks to go out of business.

The mere fact the statutory defense is defeated when the landlord, in conformance with section 1942.5, subdivisions (d) and (e), establishes a bona fide intent to go out of business does not mean that section 1942.5 has been superseded by the Act. To supersede section 1942.5, the Ellis Act would have to replace, set aside, or annul section 1942.5. As demonstrated above, our analysis relies on a close reading and application of the precise provisions Tenants fear have been superseded. Far from allowing the Act to supersede section 1942.5, our construction has given effect to the plain language of that provision, including subdivisions (d) and (e), which permit a landlord to go out of business and evict the tenants—even if the landlord has a retaliatory motive—so long as the landlord *also* has the bona fide intent to go out of business. This is what the *Cervantes* court understood those provisions to mean when it construed subdivision (d) to allow a landlord to evict the tenant "even if he had retaliation in mind . . . ." (*Cervantes, supra,* 175 Cal.App.3d at p. 733.) If, on the other hand, the landlord cannot establish a bona fide intent to go out of business, the tenants may rely on subdivisions (a) and (c) to resist the eviction.[3]

Tenants respond that the retaliatory eviction defense is "the only method available to protect one's home from an alleged phony Ellis [Act] eviction." We disagree. As explained above, a tenant who believes the landlord's invocation of the Ellis Act, Government Code, section 7060 et seq., is phony and that the landlord actually intends to offer the vacated units to new tenants may controvert the landlord's statement of intent. The landlord will then have the burden to establish his or her bona fide intent to withdraw the property from the market by a preponderance of the evidence. It is *that* requirement, and not the retaliatory eviction defense itself, that will prevent or deter phony evictions. Moreover, a defense of retaliatory eviction is of no help where the landlord's intention to withdraw units from the market is a sham but the tenant has *not* engaged in conduct protected under subdivision (a) or (c) of section 1942.5. (Cf. Civ. Code, § 1942.4, subd. (f).)

---

[3] Justice Moreno's fear that landlords will threaten to invoke the Ellis Act in order to deter tenants from exercising their legal rights is unfounded. A "threat" to remove the building from the rental market is not a right granted by the Ellis Act, which addresses only *actual* and *full* withdrawals of the property from the rental market. Hence, nothing in our decision limits the protections available to a tenant in such a situation. (See § 1942.5, subd. (c) [prohibiting threats of retaliation].)

Tenants worry next that a landlord may invoke the Act but *secretly* intend to re-rent the units once the existing tenants have been displaced. This fear, of course, presupposes that although the tenant controverted the landlord's intent, the landlord committed perjury at the hearing, the tenant was unable to uncover the perjury by cross-examination or by other evidence, and the fact finder was unable to detect the perjury. The likelihood of an erroneous outcome is further diminished by the landlord's awareness that an Ellis Act eviction followed closely in time by a re-renting of the premises to new tenants would be persuasive evidence of the landlord's bad faith in any future Ellis Act proceeding. (Civ. Code, § 1942.5, subd. (e); Evid. Code, § 1101, subd. (b).) Finally, we note that perjury concerns do not arise in *this* case, inasmuch as San Francisco has eliminated the incentive for sham Ellis Act evictions by adopting ordinances strictly limiting the landlord's right to re-rent the withdrawn property to others, to raise the rent, or to sell the property unencumbered by these limitations. (S.F. Admin. Code, § 37.9A, subds. (a), (c), (d), (g); see Gov. Code, §§ 7060.2, 7060.3.)

Unable to find support in the statutory text, Tenants urge us instead to rely on isolated fragments of the Act's legislative history. They point us in particular to a single paragraph in a Senate committee analysis discussing proposed Government Code section 7060.1. The paragraph reads: "This provision would limit a landlord's right to go out of business if the exercise of that right would jeopardize a tenant's rights under state law. For example, this provision would probably prohibit a landlord from going out of business if the tenant had requested repairs or reported housing code violations. An eviction of the tenant under such circumstances could be deemed a prohibited retaliatory eviction." (Sen. Rules Com., Off. of Sen. Floor Analyses, analysis of Sen. Bill No. 505 (1985–1986 Reg. Sess.) as amended Sept. 10, 1985, p. 3.) Yet the use of the words "probably" and "could" are sufficiently tentative and equivocal to caution us against relying too heavily on this snippet. (See *Folsom v. Butte County* (1982) 32 Cal.3d 668, 682 [186 Cal.Rptr. 589, 652 P.2d 437]; *In re Ramon A.* (1995) 40 Cal.App.4th 935, 939 [47 Cal.Rptr.2d 59].)[4]

---

[4] Tenants also relied below on a letter by the bill's author to Governor Deukmejian in which Senator Ellis recalled the "large number of amendments," which dealt with situations such as when "a landlord were to go temporarily out of business and then again offered his units for rental" and which declared "that the bill only extended to the right to go out of business and not any further right which the owner did not already possess (in other words—the bill does not convey a right to rezoning, to condominium conversion, etc.). [¶] Despite the many amendments," Senator Ellis explained, "the original thrust has been maintained: the good faith right to make a personal decision to go out of business *for whatever reason*, including potential liability, frustration with a personal service aspect of this business, psychological demands, or investment decisions." (Sen. Ellis, sponsor of Sen. Bill No. 505 (1985–1986 Reg. Sess.), letter to Governor, Sept. 13, 1985, italics added.) Although this letter is of "very little value" to the extent it merely recounts the views of the bill's author (*Bermudez v. Municipal Court* (1992)

A contrary holding would also be inconsistent with other laws and lead to absurd results. The Legislature has made it clear that a landlord who seeks to withdraw rental property under the Ellis Act has no obligation to maintain the tenantability or habitability of the premises. (Civ. Code, § 1942.4, subd. (f); Code Civ. Proc., § 1174.2, subd. (d).) If the substandard conditions themselves cannot be used by tenants to resist an unlawful detainer action when the landlord invokes the Ellis Act, it would be bizarre to say that tenants could nonetheless force the landlord to remain in business by *complaining* about those same conditions. In such a scenario, the landlord would either be forced to make repairs, in violation of the above provisions, or would be compelled to continue to offer the property for rent, in violation of the Ellis Act.

In addition, a contrary holding could permit tenants to force the landlord to remain in business indefinitely when, as here, the tenants have invoked section 1942.5, subdivision (c). This provision, which we have "denominated a 'boilerplate' provision because of its broad prohibition against retaliation by a landlord when a tenant has exercised valid legal rights" (*Barela v. Superior Court, supra,* 30 Cal.3d at p. 251), is "ongoing and *not* subject to the 180 day grace period or the limitation that it may only be invoked once a year, as are the other sanctions." (*Review of Selected 1979 California Legislation* (1979) 11 Pacific L.J. 601, 602.) As Justice Moreno concedes, the landlord could thus be compelled to remain in business indefinitely or, at the least, until a trier of fact determined that the retaliatory motive had dissipated. We are not persuaded the Legislature envisioned such a cribbed interpretation of the Ellis Act.[5]

We therefore hold that where a landlord has complied with the Ellis Act and has instituted an action for unlawful detainer, and the tenant has asserted

---

1 Cal.4th 855, 863, fn. 6 [4 Cal.Rptr.2d 609, 823 P.2d 1210]), we nonetheless note that it in no way bolsters Tenants' interpretation of the statute.

[5] Unlike Tenants, Justice Moreno argues that the retaliatory eviction defense is preserved by Government Code section 7060.7, subdivision (c), which states that the Ellis Act is not intended to "[o]verride *procedural* protections designed to prevent abuse of the right to evict tenants." (Italics added.) The defense of retaliatory eviction, however, is "a limitation upon the landlord's property rights under the police power, giving rise to a *substantive* ground of defense in unlawful detainer proceedings." (*Birkenfeld v. City of Berkeley* (1976) 17 Cal.3d 129, 149 [130 Cal.Rptr. 465, 550 P.2d 1001], italics added; *id.* at p. 151, fn. 22.) Indeed, numerous courts have characterized the retaliatory eviction defense as substantive. (E.g., *Rich v. Schwab* (1998) 63 Cal.App.4th 803, 810 [75 Cal.Rptr.2d 170]; *Cervantes, supra,* 175 Cal.App.3d at p. 737; *Glaser v. Meyers* (1982) 137 Cal.App.3d 770, 775 [187 Cal.Rptr. 242]; *Aweeka v. Bonds* (1971) 20 Cal.App.3d 278, 281 [97 Cal.Rptr. 650].) We may therefore infer that the Legislature relied on contemporaneous judicial classification of the defense as substantive in deciding to preserve only procedural protections in section 7060.7, subdivision (c). (*Bailey v. Superior Court* (1977) 19 Cal.3d 970, 977–978, fn. 10 [140 Cal.Rptr. 669, 568 P.2d 394].)

the statutory defense of retaliatory eviction, the landlord may overcome the defense by demonstrating a bona fide intent to withdraw the property from the market. If the tenant controverts the landlord's bona fide intent to withdraw the property, the landlord has the burden to establish its truth at the hearing by a preponderance of the evidence. (§ 1942.5, subd. (e).)

In this case, the superior court denied Landlord's motion for summary adjudication without first considering whether Landlord had asserted a bona fide intent to withdraw the property and, if so, whether Tenants had controverted that intent. The Court of Appeal granted the writ of mandate and directed the superior court to enter an order granting Landlord's motion for summary adjudication, again without considering those facts. Under the circumstances, we will reverse the Court of Appeal with directions to remand the matter for the superior court to analyze the motion for summary adjudication under the proper standard.

In the future, courts in similar circumstances may find it useful to consider first whether the landlord's intent to withdraw the property is bona fide. If it is, the statutory defense of retaliatory eviction has been overcome. If the landlord's intent is contested, the landlord has the burden to establish its truth. (§ 1942.5, subd. (e).) Only when the landlord has been unable to establish a bona fide intent need the fact finder proceed to determine whether the eviction is for the purpose of retaliating against the tenant under subdivision (a) or (c) of section 1942.5. ▉ Accordingly, evidence that the landlord has, in good faith, exited the rental business *because of* tenant conduct specified in subdivision (a) or (c) of section 1942.5 does not itself constitute an affirmative defense in an unlawful detainer proceeding under the Ellis Act.

## DISPOSITION

The judgment of the Court of Appeal is reversed with directions to remand the matter to the superior court for further proceedings consistent with this opinion.

George, C. J., Chin, J., and Brown, J., concurred.

**BROWN, J.,** Concurring.—I concur in the judgment and opinion of the court. I write separately in order to express my understanding on three points the superior court will, upon remand, have to consider in ruling upon the landlord's motion for summary judgment: (1) The landlord's filing of a notice of intent to withdraw his property from the rental market, as required by the San Francisco Municipal Code (S.F. Admin. Code, § 37.9A, subd. (f)), creates a nonstatutory rebuttable presumption that the landlord's intent is

bona fide.[1] (2) The tenant will, therefore, bear the burden of producing evidence sufficient to overcome this presumption, i.e., sufficient to establish that the landlord intends to re-rent the property. (3) The landlord's *motive* in withdrawing his property from the rental market is irrelevant.

Under the Ellis Act (Gov. Code, § 7060 et seq.), a local government with rent control may require a landlord to provide notice to the local government of the landlord's intention to withdraw a property from the rental market, and the local government may require that the notice contain statements, made under penalty of perjury, relating to the number and address of the accommodations, the rent charged for the residential units, and the names of the tenants or lessees. (Gov. Code, § 7060.4, subd. (a).) San Francisco has enacted such a notice requirement (S.F. Admin. Code, § 37.9A, subd. (f)), and it is undisputed that the landlord here complied with it.

Under the Ellis Act, a local government with rent control may also provide significant disincentives for re-renting a property once a notice of withdrawal has been filed. Subject to certain conditions, including the length of time that has passed since the notice of withdrawal was filed, the disincentives include: permitting the displaced tenants to rent the property again for no more than the rent in effect at the time of withdrawal, plus allowable annual increases; permitting the displaced tenants to sue the landlord for actual and exemplary damages; and permitting the local government to sue the landlord for exemplary damages. (Gov. Code, § 7060.2, subds. (a)(1), (b).) San Francisco has enacted these disincentives for re-renting withdrawn properties. (S.F. Admin. Code, § 37.9A, subds. (a), (c), (d).)

Because San Francisco's disincentives for re-renting withdrawn properties are so significant, a landlord who, like the landlord here, has given notice of his intent to withdraw his property from the rental market is entitled to a presumption that he has a bona fide intent to do so. He should not, in the absence of any contrary evidence, be saddled with proving a negative, i.e., that he does not intend to re-rent the property in the future.

To overcome the presumption that the landlord has a bona fide intent to withdraw his property from the rental market, the tenant will have to produce

---

[1] The power of California appellate courts to create presumptions is expressly recognized by the Evidence Code. (*In re Daniel Z.* (1992) 10 Cal.App.4th 1009, 1019 [13 Cal.Rptr.2d 139]; 1 Witkin, Cal. Evid. (4th ed. 2000) Burden of Proof and Presumptions, § 103, p. 235.) That the Evidence Code recognizes the power of appellate courts to create presumptions becomes clear when sections 600 and 160 are read together. Evidence Code section 600 provides that a presumption is an assumption of fact "the law requires" to be made from another fact or group of facts established in the action, and Evidence Code section 160 provides that "law" includes "decisional law."

admissible evidence, evidence sufficient to justify a judgment for the tenant, that the landlord intends to re-rent the property. (Cf. *Texas Dept. of Community Affairs v. Burdine* (1981) 450 U.S. 248, 254–255 [67 L.Ed.2d 207, 101 S.Ct. 1089] [once a prima facie showing of discrimination has been made, the burden shifts to the defendant to rebut the presumption by producing admissible evidence, sufficient to justify a judgment for the defendant, that its action was taken for a legitimate, nondiscriminatory reason].)

Finally, the landlord's *motive* in withdrawing his property from the rental market is, as the majority opinion points out, irrelevant. (Maj. opn., *ante*, at pp. 595–596.)

Baxter, J., concurred.

**MORENO, J.,** Concurring and Dissenting.—I agree with the majority that the judgment of the Court of Appeal must be reversed. The Court of Appeal erroneously held that "in unlawful detainer proceedings properly commenced under the Ellis Act, a tenant may not raise an affirmative defense of retaliatory eviction." The Ellis Act (Gov. Code, § 7060 et seq.) expressly provides that it does not supersede Civil Code section 1942.5, which offers tenants protection against retaliatory eviction. The Ellis Act underscores this point by further stating that it is not intended to "[o]verride procedural protections designed to prevent abuse of the right to evict tenants." (Gov. Code, § 7060.7, subd. (c).) It is clear, as the majority recognizes, that a tenant may raise the defense of retaliatory eviction in unlawful detainer proceedings brought under the Ellis Act.

I disagree, however, with the majority's holding that, on remand, the trial court should reconsider the landlord's motion for summary adjudication under the standard that "a landlord's bona fide intent to withdraw the property from the rental market under the Ellis Act will defeat the statutory defense of retaliatory eviction." (Maj. opn., *ante*, at p. 588.) As I will explain, I find nothing in the language of the Ellis Act or the statutes governing the defense of retaliatory eviction that permits a landlord to evict tenants under the Ellis Act for a retaliatory purpose.

The Ellis Act was intended to supersede our decision in *Nash v. City of Santa Monica* (1984) 37 Cal.3d 97 [207 Cal.Rptr. 285, 688 P.2d 894], which upheld a city charter provision that prohibited removal of rental units from the housing market absent a permit from the city rent control board. (*First Presbyterian Church v. City of Berkeley* (1997) 59 Cal.App.4th 1241, 1249 [69 Cal.Rptr.2d 710].) The Ellis Act begins by stating: "No public entity . . . shall . . . compel the owner of any residential real property to offer, or to continue to offer, accommodations in the property for rent or lease." (Gov. Code, § 7060, subd. (a).)

The Legislature thus prohibited municipalities from preventing a landlord from removing an entire residential building from the rental market, but the Legislature took considerable pains to limit the reach of the Ellis Act. As particularly relevant here, Government Code section 7060.1, subdivision (d), provides that nothing in the Ellis Act supersedes numerous provisions of several codes, including "Title 5 (commencing with Section 1925) of Part 4 of Division 3 of the Civil Code." Title 5 includes Civil Code section 1942.5 (hereafter section 1942.5), which protects tenants against retaliatory evictions.

Underscoring the limitations placed on the scope of the Ellis Act, Government Code section 7060.7 states: "It is the intent of the Legislature in enacting this chapter to supersede any holding or portion of any holding in *Nash v. City of Santa Monica,* 37 Cal.3d 97 [207 Cal.Rptr. 285, 688 P.2d 894] to the extent that the holding, or portion of the holding, conflicts with this chapter, so as to permit landlords to go out of business. However, this act is not otherwise intended to do any of the following: [¶] . . . [¶] (c) Override procedural protections designed to prevent abuse of the right to evict tenants."

The majority reasons that Government Code section 7060.7, subdivision (c), does not apply because it refers to " 'procedural' " protections designed to prevent abuse of the right to evict tenants, and the prohibition against retaliatory eviction is " 'substantive.' " (Maj. opn., *ante,* at p. 599, fn. 5, italics omitted.) In support of this contention, the majority quotes *Birkenfeld v. City of Berkeley* (1976) 17 Cal.3d 129, 149 [130 Cal.Rptr. 465, 550 P.2d 1001], for the proposition that the defense of retaliatory eviction is "a limitation upon the landlord's property rights under the police power, giving rise to a *substantive* ground of defense in unlawful detainer proceedings." (Italics added.) But the quoted portion of *Birkenfeld* does not refer to the defense of retaliatory eviction, or to section 1942.5, but to the Berkeley rent control law that required landlords to obtain a certificate of eviction from the city to recover possession of a rent-controlled unit. This is clear when the partial quotation relied upon by the majority is considered in context: "The purpose of the unlawful detainer statutes is procedural. The statutes implement the landlord's property rights by permitting him to recover possession once the consensual basis for the tenant's occupancy is at an end. In contrast the *charter amendment's* elimination of particular grounds for eviction is a limitation upon the landlord's property rights under the police power, giving rise to a substantive ground of defense in unlawful detainer proceedings." (*Birkenfeld v. City of Berkeley, supra,* 17 Cal.3d at p.149, italics added.)

The majority also cites the decision in *Aweeka v. Bonds* (1971) 20 Cal.App.3d 278, 281 [97 Cal.Rptr. 650], which, without any analysis or explanation, describes the common law doctrine of retaliatory eviction established in *Schweiger v. Superior Court* (1970) 3 Cal.3d 507 [90 Cal.Rptr. 729,

476 P.2d 97] as a "substantive defense." The majority further cites three Court of Appeal decisions that quote this language in *Aweeka* without discussion. From this, the majority infers that "the Legislature relied on contemporaneous judicial classification of the defense as substantive in deciding to preserve only procedural protections in section 7060.7, subdivision (c)." (Maj. opn., *ante*, at p. 599, fn. 5.) I disagree. The fact that some courts have described in passing the common law doctrine of retaliatory eviction as "substantive" does not support the majority's conclusion that the Legislature considered the protections set forth in section 1942.5 to be "substantive" rather than "procedural." Subdivision (a) of section 1942.5, for example, provides that a landlord may not retaliate against a tenant by recovering possession of a dwelling in any action or proceeding within 180 days of certain actions by the tenant. This certainly appears to be one of the "procedural protections designed to prevent abuse of the right to evict tenants" to which Government Code section 7060.7, subdivision (c), refers. In my view, the statement in Government Code section 7060.7, subdivision (c), that the Ellis Act was not intended to "[o]verride procedural protections designed to prevent abuse of the right to evict tenants" means that the protections against retaliatory eviction afforded by section 1942.5 apply to landlords proceeding under the Ellis Act.

In the present case, the landlord of a two-unit apartment building in San Francisco filed a complaint for unlawful detainer against the tenants in one of the units, alleging that he had filed with the rent control board a notice of intention to withdraw the building from the rental market under the Ellis Act and had served the tenants with notice to quit the premises, but the tenants had failed to do so. The tenants answered, raising several affirmative defenses, including retaliatory eviction.

The landlord moved for summary adjudication arguing, in part, that retaliatory eviction may not be raised as a defense to an unlawful detainer action based upon the Ellis Act. The Superior Court granted the motion for summary adjudication in part, but denied summary adjudication of the defense of retaliatory eviction.

The Court of Appeal reversed, holding that "in unlawful detainer proceedings properly commenced under the Ellis Act, a tenant may not raise an affirmative defense of retaliatory eviction to prevent displacement, but retains the right to an independent action for damages under the retaliatory eviction statute."

As the majority recognizes, the Court of Appeal erred in concluding that the defense of retaliatory eviction under section 1942.5 may not be raised in unlawful detainer proceedings based upon the Ellis Act. As noted above, the

Ellis Act clearly states that it does not supersede section 1942.5 and was not intended to "[o]verride procedural protections designed to prevent abuse of the right to evict tenants." (Gov. Code, § 7060.7, subd. (c); see *id.*, § 7060.1, subd. (d).) The language of the Ellis Act clearly permits a tenant to raise the defense of retaliatory eviction in an unlawful detainer action.

The majority goes on to hold, however, that a landlord will defeat the defense of retaliatory eviction under section 1942.5 if the landlord can demonstrate "a bona fide intent to withdraw the property from the [rental] market" (maj. opn., *ante*, at p. 600), even if the landlord's purpose is to retaliate against the tenant for the tenant's exercise of rights protected by section 1942.5. I am not convinced by the majority's reasoning.

The majority bases its holding that a landlord may invoke the Ellis Act to evict a tenant for a retaliatory purpose not upon the language of the Ellis Act, but upon the language of the statute that provides protection against retaliatory evictions. Section 1942.5, subdivision (a), provides that a landlord may not recover possession of a leased dwelling within 180 days of the tenant's exercise of certain rights, including making a complaint about the tenantability of the premises, if the tenant is not in default as to payment of rent and the landlord is "retaliat[ing] against the lessee because of the exercise by the lessee of his rights under this chapter or because of his complaint to an appropriate agency as to tenantability of a dwelling." The tenant may not invoke the protection of subdivision (a) "more than once in any 12-month period." (*Id.*, subd. (b).) Subdivision (c) of section 1942.5 prohibits a landlord from bringing an action to recover possession of a dwelling "for the purpose of retaliating against the lessee because he or she has lawfully organized or participated in a lessees' association or an organization advocating lessees' rights or has lawfully and peaceably exercised any rights under the law."[1]

---

[1] Section 1942.5 provides, in pertinent part: "(a) If the lessor retaliates against the lessee because of the exercise by the lessee of his rights under this chapter or because of his complaint to an appropriate agency as to tenantability of a dwelling, and if the lessee of a dwelling is not in default as to the payment of his rent, the lessor may not recover possession of a dwelling in any action or proceeding . . . within 180 days: [¶] (1) After the date upon which the lessee, in good faith, has given notice pursuant to Section 1942, or has made an oral complaint to the lessor regarding tenantability; or [¶] (2) After the date upon which the lessee, in good faith, has filed a written complaint, or an oral complaint which is registered or otherwise recorded in writing, with an appropriate agency, of which the lessor has notice, for the purpose of obtaining correction of a condition relating to tenantability . . . . [¶] . . . [¶] (b) A lessee may not invoke the provisions of subdivision (a) more than once in any 12-month period. [¶] (c) It shall be unlawful for a lessor to . . . bring an action to recover possession . . . for the purpose of retaliating against the lessee because he or she has lawfully organized or participated in a lessees' association or an organization advocating lessees' rights or has lawfully and peaceably exercised any rights under the law. In an action brought by or against the lessee pursuant to this subdivision, the lessee shall bear the burden of producing evidence that the lessor's conduct was, in fact, retaliatory. [¶] (d) Nothing in this section shall be

In concluding that, despite this language, a landlord may recover possession of a dwelling under the Ellis Act even if the landlord acts for a retaliatory purpose, the majority relies upon subdivision (d) of section 1942.5, which states: "Nothing in this section shall be construed as limiting in any way the exercise by the lessor of his rights under any lease or agreement or any law pertaining to the hiring of property or his right to do any of the acts described in subdivision (a) or (c) for any lawful cause." The majority reasons that a landlord's withdrawal of a dwelling from the rental market falls under section 1942.5, subdivision (d)'s exception to the proscription against retaliatory eviction because it constitutes "an exercise of rights under a law pertaining to the hiring of property." (Maj. opn., *ante*, at p. 595.)

The majority's reasoning fails because even assuming that withdrawing a property from the rental market under the Ellis Act constitutes "an exercise of rights under a law pertaining to the hiring of property" (maj. opn., *ante*, at p. 595), permitting a tenant to raise a defense of retaliatory eviction does not "limit[] in any way" the landlord's exercise of rights under the Ellis Act. (§ 1942.5, subd. (d).) The Ellis Act expressly states that it is subject to the proscription against retaliatory eviction set forth in section 1942.5. As noted above, Government Code section 7060.1, subdivision (d), states that nothing in the Ellis Act supersedes numerous statutory provisions, including section 1942.5's proscription against retaliatory eviction. Government Code section 7060.7 declares the Legislature's intent that the Ellis Act not "[o]verride procedural protection designed to prevent abuse of the right to evict tenants." The procedures for removing a dwelling from the rental market provided by the Ellis Act, therefore, are subject to the proscription against retaliatory eviction set forth in section 1942.5. The Ellis Act does not give landlords the right to evict tenants for a retaliatory purpose. Prohibiting a landlord from evicting a tenant under the Ellis Act for a retaliatory purpose, therefore, does not limit the landlord's exercise of rights under the Ellis Act. The majority mistakenly limits its analysis to whether "a landlord's withdrawal of property from the rental market under the Ellis Act constitute[s] an exercise of rights under a law pertaining to the hiring of property" (maj. opn., *ante*, at p. 595), without further considering whether a tenant's assertion of the defense of retaliatory eviction limits the landlord's exercise of rights under the Ellis Act.

construed as limiting in any way the exercise by the lessor of his rights under any lease or agreement or any law pertaining to the hiring of property or his right to do any of the acts described in subdivision (a) or (c) for any lawful cause. . . . [¶] (e) Notwithstanding the provisions of subdivisions (a) to (d), inclusive, a lessor may recover possession of a dwelling and do any of the other acts described in subdivision (a) within the period or periods prescribed therein, or within subdivision (c), if the notice of termination, rent increase, or other act, and any pleading or statement of issues in an arbitration, if any, states the ground upon which the lessor, in good faith, seeks to recover possession, increase rent, or do any of the other acts described in subdivision (a) or (c). If such statement be controverted, the lessor shall establish its truth at the trial or other hearing."

It is difficult to imagine why the Legislature would have specifically stated in the Ellis Act that it did not supersede the protections against retaliatory eviction in section 1942.5 if it simply intended, as the majority holds, that a landlord may evict a tenant for a retaliatory purpose under the Ellis Act as long as the landlord actually intends to withdraw the building from the rental market.

The legislative history of Government Code section 7060.1, subdivision (d), supports the conclusion that a landlord may not evict a tenant under the Ellis Act for a retaliatory purpose. As the majority recognizes, a Senate committee analysis of the legislation that enacted Government Code section 7060.1, subdivision (d), states that " 'this provision would probably prohibit a landlord from going out of business if the tenant had requested repairs or reported housing code violations. An eviction of the tenant under such circumstances could be deemed a prohibited retaliatory eviction.' " (Maj. opn., *ante*, at p. 598.) The majority dismisses this compelling evidence of the intent of the Legislature, citing our decision in *Folsom v. Butte County Assn. of Governments* (1982) 32 Cal.3d 668 [186 Cal.Rptr. 589, 652 P.2d 437], to support its conclusion that "the use of the words 'probably' and 'could' are sufficiently tentative and equivocal to caution us against relying too heavily on this snippet." (Maj. opn., *ante*, at p. 598.) Our decision in *Folsom v. Butte County Assn. of Governments* does not support the majority's conclusion.

*Folsom v. Butte County Assn. of Governments, supra*, 32 Cal.3d 668, 681–682, concluded that legislative history showing that the word "private" had been included in the original version of a bill, deleted by the Assembly, and then reinserted by the Senate was "at best equivocal." By contrast, the committee analysis relied upon by tenants in the present case could hardly be more clear. It demonstrates that the Legislature specifically contemplated that the Ellis Act would not allow a landlord to go out of business for a retaliatory purpose. The use of the words "probably" and "could" do not affect this conclusion. Those words acknowledge that a notice to quit under the Ellis Act that followed a tenant's report of housing code violations "would probably" or "could" be deemed retaliatory, but would not necessarily be deemed so. The committee analysis is clear and unequivocal, however, that a "retaliatory eviction," if established, would be "prohibited." (Sen. Rules Com., Off. of Sen. Floor Analyses, analysis of Sen. Bill No. 505 (1985–1986 Reg. Sess.) as amended Sept. 10, 1985, p. 3.) This is compelling evidence that the Legislature did not intend the Ellis Act to empower a landlord to evict a tenant for a retaliatory purpose.

The majority states that, notwithstanding subdivision (d) of section 1942.5, "landlords must assert their invocation of the Ellis Act 'in good faith' " under

subdivision (e) of section 1942.5. (Maj. opn., *ante*, at p. 595.)[2] The majority interprets the term "good faith" in this context to mean a bona fide intent to withdraw the property from the rental market. (Maj. opn., *ante*, at p. 596.) I do not agree that a bona fide intent to withdraw a dwelling from the rental market necessarily establishes that a landlord acts in good faith in attempting to evict a tenant.

In *Western Land Office, Inc. v. Cervantes, supra*, 175 Cal.App.3d 724, 733, the Court of Appeal examined the predecessor to subdivision (e) of section 1942.5 and observed that it "covered the situation where the complaining tenant was not in violation of any law or agreement, but the landlord nevertheless wished to take action *in good faith for a valid reason*." (Italics added.) The court·offered examples of such valid reasons: "[A] landlord might have wanted (1) to raise the tenant's rent because taxes on the property had increased; (2) to recover possession of the tenant's dwelling for the purpose of remodeling or demolishing; or (3) to sell the premises to someone who had another tenant in mind." (*Ibid.*)

Contrary to the majority's holding, the Court of Appeal in *Cervantes* made clear that a landlord who was acting for a retaliatory purpose was not acting in good faith: "Proof of a valid ground may undermine evidence of a retaliatory motive. But proof of a valid ground is not equivalent to proof of good faith. In a given instance, a valid ground might exist but the landlord might nevertheless act with a retaliatory motive. A property tax increase of five dollars does not necessarily justify an increase in rent of one hundred dollars. Therefore, under subdivision (a) of the statute, a trier of fact confronted with substantial evidence of a valid ground nevertheless had to decide whether the landlord's 'dominant purpose' was retaliation." (*Western Land Office, Inc. v. Cervantes, supra*, 175 Cal.App.3d 724, 734.)[3] In my view, therefore, a landlord who is acting for a retaliatory purpose is not acting in "good faith" within the meaning of subdivision (e) of section 1942.5.

The majority observes that neither the tenants nor the author of this opinion "has identified a single jurisdiction in this country that has sustained a retaliatory eviction defense—or what might more accurately be termed a retaliatory *withdrawal* defense—where a landlord seeks to take a building off

---

[2] I question the majority's premise that subdivision (e) of section 1942.5 imposes additional requirements to those set forth in subdivision (d) of the statute. Rather, it appears that subdivision (e) provides a separate and distinct exception to the proscription against retaliatory eviction. (See *Western Land Office, Inc. v. Cervantes* (1985) 175 Cal.App.3d 724, 733–734 [220 Cal.Rptr. 784].)

[3] The requirement in section 1942.5, subdivision (a), as originally enacted, that the landlord " 'has as his dominant purpose retaliation against the lessee' " (*Western Land Office, Inc. v. Cervantes, supra*, 175 Cal.App.3d 724, 732, fn. 5) is replaced in the current statute with the requirement that the landlord "retaliates against the lessee." (§ 1942.5, subd. (a).)

the market." (Maj. opn., *ante*, at p. 596.) The significance of this fact escapes me. It is equally true that the majority has not identified any jurisdiction that has upheld a retaliatory eviction on the grounds that the landlord intends to remove the dwelling from the rental market.

In support of its observation that no jurisdiction has sustained a "retaliatory *withdrawal* defense," the majority relies upon two opinions that are inapposite. (Maj. opn., *ante*, at p. 596.) The majority cites the decision in *California Livestock Production Credit Assn. v. Sutfin* (1985) 165 Cal.App.3d 136 [211 Cal.Rptr. 152], for the proposition that a "claim of retaliation is not a defense in [an] unlawful detainer action based on foreclosure of property." (Maj. opn., *ante*, at p. 596.) The decision in *California Livestock* held that retaliatory eviction is not a defense to eviction following a valid foreclosure sale because "there is no antecedent landlord-tenant relationship between the trustor and the purchaser. There is no lease or rental agreement entitling the trustor to remain in possession of the premises; the trustor's only right to possession is based on his title to the premises, which has been lost at a valid foreclosure sale. Thus, even if the purchaser were precluded from using an 'invalid reason' for eviction, the trustor would still have no lawful claim to continued possession." (*California Livestock Production Credit Assn. v. Sutfin, supra*, 165 Cal.App.3d at p. 143.) This reasoning has no application in the present case.

The majority also cites *Carol Rickert & Associates v. Law* (2002) 132 N.M. 687 [54 P.3d 91], for the proposition that a "claim of retaliation is not a defense in [an] unlawful detainer action based on [a] landlord's decision not to remain in the federal government's former Section 8 housing program." (Maj. opn., *ante*, at p. 596.) The decision in *Carol Rickert* clearly is distinguishable. The New Mexico statute at issue in *Carol Rickert* prohibited retaliatory eviction, but included an exception that permitted a landlord to increase rent or alter services "if the owner can establish that the increased rent or changes in services are consistent with those imposed on other residents of similar rental units and are not directed at the particular resident, but are uniform." (*Carol Rickert & Associates v. Law, supra*, 54 P.3d at p. 98.) *Carol Rickert* held that the tenant's claim of retaliatory eviction was prohibited by this statutory language because the landlord's action was uniform: "[T]he parties do not dispute that Owner's decision to discontinue participation in the Section 8 housing program was to be uniformly applied to all Section 8 tenants as their leases expired. Accordingly, Tenant cannot base her retaliation defense on Owner's decision to discontinue the Section 8 program." (*Ibid.*) *Carol Rickert* thus has no bearing on the issues in the present case.

The majority states that prohibiting landlords from engaging in retaliatory evictions under the Ellis Act would be inconsistent with other laws and lead

to absurd results. (Maj. opn., *ante*, at p. 599.) The majority cites Civil Code section 1942.4, which prohibits a landlord from collecting rent for a dwelling that is deemed untenantable, but expressly provides that a landlord who is withdrawing the building from the rental market under the Ellis Act need not comply with this statute. The majority also cites Code of Civil Procedure section 1174.2, subdivision (d), which permits a tenant to assert that the premises are uninhabitable as a defense in an unlawful detainer action following default in the payment of rent, but expressly provides that nothing in the statute "shall limit or supersede any provision" of the Ellis Act. Neither of these statutes is inconsistent with prohibiting a landlord from evicting a tenant under the Ellis Act for a retaliatory purpose. Further, these statutes demonstrate that the Legislature knew how to exempt landlords who are proceeding under the Ellis Act from the requirements of certain statutes. The Legislature chose not to exempt landlords from the prohibition against retaliatory evictions set forth in section 1942.5. " 'We must assume that the Legislature knew how to create an exception if it wished to do so . . . .' [Citation.]" (*California Fed. Savings & Loan Assn. v. City of Los Angeles* (1995) 11 Cal.4th 342, 349 [45 Cal.Rptr.2d 279, 902 P.2d 297]; see *County of San Diego v. State of California* (1997) 15 Cal.4th 68, 94–95 [61 Cal.Rptr.2d 134, 931 P.2d 312]; *City of Santa Cruz v. Municipal Court* (1989) 49 Cal.3d 74, 88 [260 Cal.Rptr. 520, 776 P.2d 222].)

The majority also observes that a contrary holding "could permit tenants to force the landlord to remain in business indefinitely" "or, at the least, until a trier of fact determined that the retaliatory motive had dissipated." (Maj. opn., *ante*, at p. 599.) As the majority recognizes, however, this concern does not apply if the tenant proceeds under subdivision (a) of section 1942.5, which only prohibits the landlord from evicting the tenant within 180 days of the tenant's exercise of the specified rights and which can be invoked by the tenant only once in any 12-month period. The majority's concern applies only if the tenant proceeds under subdivision (c) of section 1942.5 and is able to prove that the landlord is acting "for the purpose of retaliating against the lessee because he or she has lawfully organized or participated in a lessees' association or an organization advocating lessees' rights or has lawfully and peaceably exercised any rights under the law."

We confronted the same concern in recognizing the common law doctrine of retaliatory eviction, stating: "Of course, we do not imply that a tenant who proves a retaliatory purpose is entitled to remain in possession in perpetuity. As the court stated in *Edwards*: 'If this illegal purpose is dissipated, the landlord can . . . evict his tenants or raise their rents for economic or other legitimate reasons, or even for no reason at all. The question of permissible or impermissible purpose is one of fact for the court or jury. . . .' (Fns. omitted.) [Citation.]" (*Schweiger v. Superior Court, supra,* 3 Cal.3d 507, 517.) Even when a tenant proceeds under subdivision (c) of section 1942.5, a landlord is

prohibited from removing a building from the rental market only as long as the landlord is acting for a retaliatory purpose. This means only that landlords may not wrongfully use the Ellis Act to engage in retaliatory evictions. Nothing in section 1942.5 prevents a landlord who is not acting for a retaliatory purpose from withdrawing a dwelling from the rental market.

"Section 1942.5 is a remedial statute aimed at protecting tenants from certain types of abuses. It is to be 'liberally construed to effect its objectives and to suppress, not encourage, the mischief at which it was directed. [Citation.]' [Citation.]" (*Barela v. Superior Court* (1981) 30 Cal.3d 244, 251 [178 Cal.Rptr. 618, 636 P.2d 582].) In *Schweiger v. Superior Court, supra*, 3 Cal.3d 507, 513, we quoted at length the "persuasive reasoning" in *Edwards v. Habib* (D.C. Cir. 1968) 130 U.S.App.D.C. 126 [397 F.2d 687], that " 'while the landlord may evict for any legal reason or for no reason at all, he is not, we hold, free to evict in retaliation for his tenant's report of housing code violations to the authorities. As a matter of statutory construction and for reasons of public policy, such an eviction cannot be permitted.' " (*Schweiger v. Superior Court, supra*, 3 Cal.3d at p. 512.) We recognized that protection against retaliatory eviction was necessary to protect a tenant's ability to demand clean and safe housing: " 'The housing and sanitary codes . . . indicate a strong and pervasive congressional concern to secure for the city's slum dwellers decent, or at least safe and sanitary, places to live. Effective implementation and enforcement of the codes obviously depend in part on private initiative in the reporting of violations. . . . To permit retaliatory evictions . . . would clearly frustrate the effectiveness of the housing code as a means of upgrading the quality of housing in Washington. . . . There can be no doubt that the slum dweller, even though his home be marred by housing code violations, will pause long before he complains of them if he fears eviction as a consequence. Hence an eviction under the circumstances of this case would not only punish appellant for making a complaint which she had a constitutional right to make, . . . but also would stand as a warning to others that they dare not be so bold . . . .' " (*Ibid.*)

As one commentator observed: "In large measure, the scope and effectiveness of tenant remedies for substandard housing will be determined by the degree of protection given tenants against retaliatory actions by landlords. If a landlord is free to evict or otherwise harass a tenant who exercises his right to secure better housing conditions, few tenants will use the remedies for fear of being put out on the street." (Daniels, *Judicial and Legislative Remedies for Substandard Housing: Landlord-Tenant Law Reform in the District of Columbia* (1971) 59 Geo. L.J. 909, 943.)

The majority's holding will permit landlords to threaten tenants that if they complain about the condition of their residence or exercise their rights under

Civil Code section 1942 to make necessary repairs and deduct the cost from their rent, the landlord may remove the building from the rental market under the Ellis Act and evict them. Such a threat might be especially effective in discouraging the formation of tenant associations, which are specifically protected under section 1942.5, subdivision (c). The majority opinion thus violates the public policy of this state by encouraging retaliatory eviction.

Like the majority, I would reverse the judgment of the Court of Appeal, but I would not hold, as does the majority, "that a landlord's bona fide intent to withdraw the property from the rental market under the Ellis Act will defeat the statutory defense of retaliatory eviction." (Maj. opn., *ante*, at p. 588.) In my view, the Ellis Act was not intended to permit a landlord to evict a tenant for a retaliatory purpose.

Kennard, J., and Werdegar, J., concurred.